**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Maurice WILEY and William Earl Patrick O'Donnell, Defendants-Appellants, Nos. 75–1551 and 75–1552 (two cases).**

**Nos. 75–1551 and 75–1552.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1975.

Decided Feb. 25, 1976.

Rehearing Denied June 11, 1976.

Eugene C. Gaerig, Memphis, Tenn. (Court-appointed), and Hal Gerber, Gerber & Gerber, Memphis, Tenn., for defendants-appellants.

Thomas F. Turley, Jr., U. S. Atty., Larry E. Parrish, Asst. U. S. Atty., Memphis, Tenn., for U. S.

Before WEICK, MILLER and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

James Maurice Wiley and William Earl Patrick O'Donnell were convicted in a jury trial in the United States District Court for the Western District of Tennessee of conspiracy to commit mail fraud, 18 U.S.C. § 371. Wiley was also convicted of a substantive count of mail fraud in the same trial. 18 U.S.C. § 1341; 18 U.S.C. § 2(b).

The government alleged that defendant Wiley requested his barber Sherman Roy Dean to set his houseboat on fire in order to collect the insurance proceeds of $3,817 for the loss of the boat and its contents. Dean enlisted the help of a number of his acquaintances including defendant O'Donnell. After two unsuccessful attempts, Dean, O'Donnell, and others succeeded in burning the boat. In the trial below, Dean testified for the government.

Of the numerous assignments of error made by both defendants, we have concluded that the only claim of error meriting extended discussion is the contention that defendants were deprived of a fair trial because of prosecutorial misconduct. We further conclude that such misconduct requires reversal and new trial of the charges against the defendant Wiley, but not against the defendant O'Donnell.

This Circuit has many times expressed itself fully upon the issue of misconduct of government counsel in the prosecution of criminal cases. See, generally, *United States v. Calvert,* 498 F.2d 409 (6th Cir. 1974); *United States v. Smith,* 403 F.2d 74 (6th Cir. 1968); *United States v. Nemeth,* 430 F.2d 704 (6th Cir. 1970); *United States v. Perry,* 512 F.2d 805 (6th Cir. 1975), and most recently, in *United States v. Blanton,* 520 F.2d 907, No. 74–2113, (6th Cir. decided July 29, 1975). Our decisions in this area have been in recognition of the standard of conduct imposed upon the prosecution of

federal crimes as outlined in *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). In *Berger,* the United States Supreme Court, noting that the case against the defendant there depended mainly upon the testimony of an accomplice with a long criminal record, reversed conviction on a finding that the government attorney was guilty of

> "misstating the facts in his cross examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof is offered; of pretending to understand that a witness had said something which he had not said, and persistently cross-examining the witness upon that basis; of assuming prejudicial facts not in evidence; of bullying and arguing with witnesses; and in general of conducting himself in a thoroughly indecorous and improper manner."

*Berger v. United States, supra,* at 84, 55 S.Ct. at 631.

In our review of prosecutorial conduct claimed improper on direct appeal, we are not limited by the narrower standards which have confined federal intervention in state proceedings to violations of federally guaranteed constitutional right, see *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Thus, as in *United States v. Peak,* 498 F.2d 1337 (6th Cir. 1974), the standards of *Berger v. United States, supra,* apply in full force and particularly its observation that:

> "Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."

*Berger v. United States, supra,* 295 U.S. at 88, 55 S.Ct. at 633.

The principal charge of misconduct is defendant Wiley's claim that the Assistant United States Attorney prejudicially interjected before the jury testimony that Wiley

had unlawfully dealt in stolen jewelry; in short, that Wiley was a fence for Dean and others. The first such occurrence appears in the government's case-in-chief when the Assistant United States Attorney asked Dean:

"Q. Have you ever referred any people to Mr. James Maurice Wiley for the purpose of dealing in stolen property?

A. Yes, sir."

When defense counsel objected, the court asked the prosecutor to rephrase the question, whereupon the Assistant United States Attorney elicited from Dean further testimony that he had sold a diamond ring to Mr. Wiley. While this ring appears to have been the personal property of Mr. Dean, the Assistant United States Attorney drew Dean out further:

"Q. Did you ever refer other people to him?

A. Yes, sir.

Q. For what purpose?

A. There was a fellow here in town that had some rings, and he came by and wanted to know if I was interested in them, and I told him 'no', but I called Mr. Wiley about it.

Q. Did you talk to Mr. Wiley about those rings?

A. Yes. sir.

Q. Was this just one or two?

A. No, sir. It was a tray of rings.

Q. How many?

A. I don't have any idea.

Q. Was it more or less than ten, or about ten, or do you have any recollection?

A. Just a small tray of rings.

Q. Did you tell Mr. Wiley anything about those rings?

A. I told him they were stolen.

Q. Did he agree to look at them or see them?

A. Yes, sir."

Upon objection, the court, out of the presence of the jury, observed that:

"It is my thought that Mr. Parrish should not ask questions which go to whether or not the items were stolen. He may cer-

tainly go back and establish the relationship that existed, and that would include whether or not this witness told Mr. Wiley that he was of the criminal type. . . ."

Later the jury was brought back in and the trial judge thereupon sought to explain to the jury his ruling that the testimony which had been elicited from Dean was to be disregarded:

"The Court ruled and instructs you that Mr. Wiley is a defendant in this trial for the charges set forth in the indictment, and that is all.

The Court instructs you that any testimony that he has been a participant in any other type of misconduct with regard to jewelry that was stolen is not an issue in this case.

Therefore, any testimony from which you might have inferred that he was should be disregarded, and the court has ruled that the relationship that this witness might be asked to testify concerning the nature of his relationship with Mr. Wiley and his contacts with him, and their business dealings, are relevant.

I might say that the Court will instruct you later that there is another rule of law that there are various ways of impeaching a witness' testimony, and one of those ways is to show that a witness who is called to testify might be considered for impeachment if he has been guilty of a felony previous to his testimony. I will have more to say about this later, but this is true of any witness, and the lawyers are usually informed enough to bring that out, and they will address you later as to the effect it should have.

I believe these remarks are what the Court would consider appropriate in light of the problem called to the Court's attention.

Mr. Parrish, you may proceed."

 The Assistant United States Attorney sought to justify his effort to interject the suggestion that Wiley dealt in stolen goods by the contention that the testimony was necessary to establish the confi-

dential nature of Wiley's relationship with Dean, thus increasing the probability that Wiley would have approached his barber with the illegal design to burn the houseboat. While we agree with the government that the existence of a close relationship is relevant to the question of whether Wiley would confide in Dean, see generally *United States v. Kraft*, 407 F.2d 1065 (6th Cir. 1969), the countervailing policy is the degree of prejudice resulting from the admission of the testimony. As a general rule, evidence concerning the commission of crimes other than that charged in the indictment is inadmissible, not because such evidence might not be relevant, but that the resulting prejudice would be too great. *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

■ However, as Judge McCree's scholarly discussion in *United States v. Ring*, 513 F.2d 1001 (6th Cir. 1975) notes, certain exceptions to the general rule exist in attempts to prove motive, intent, absence of mistake or inadvertence, identity of the offender or a common plan, pattern or scheme. The government in this case does not attempt to justify the introduction of its evidence into any of the above categories, nor does it appear that the government would succeed if it had argued any of the exceptions. We need not consider whether the categories are exhaustive, *United States v. Ring, supra*, at 1004, n. 2, for even under the broader balancing test as delineated in *United States v. Woods*, 484 F.2d 127, 134 (4th Cir. 1973), *cert. denied*, 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974), the challenged testimony is clearly inadmissible. The harm to the defendant far outweighed any need of the government to show the nature of the relationship between Wiley and Dean.

While it is true here that the trial judge did eventually rule Dean's affirmative answer to be inadmissible and instructed the jury to disregard it, it is the claim of Wiley's counsel that the court could not "unring the bell".

We are not willing to say that in another case, a prompt and clear admonition by the court to the jury to disregard such testimony might not be effective to erase possible prejudice. Here we conclude that it was not. We cannot be satisfied that the trial judge's ruling and admonishment was so unequivocal as to erase any possible harm. On the contrary the impact of the court's instruction was that the evidence might later become relevant for impeachment purposes; the inference was that it might be shown that the defendant Mr. Wiley was in fact guilty of a felony. Rather than curing the error, it is our conclusion the purport of the court's instructions merely compounded it.

The suggestion of Wiley's complicity with stolen goods was in addition accentuated by the Assistant United States Attorney's second attempt to introduce challenged testimony by Dean. Later in the trial, after Wiley had testified in his own defense, the prosecution recalled Dean as a rebuttal witness and asked the following question:

"Mr. Dean, have you ever heard, before you were incarcerated, have you ever heard a rumor in the community of Memphis concerning Mr. Wiley, that he was a person that dealt in stolen jewels?"

The government's theory was that since Wiley had put his good character in issue, rebuttal testimony was permissible. The district court sustained the objection to its admission, however, when Dean admitted that he was unfamiliar with Wiley's reputation among his neighbors and acquaintances in the community. Our view of the matter is that the Assistant United States Attorney committed error in the first instance by even asking the question on direct examination.[1] It is settled that

---

1. We understand the rule to be no different under the new Federal Rules of Evidence. See Rules 404 and 405. As observed in the Advisory Committee's Note to Rule 405:
 "Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time it possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time. Consequently the rule confines the use of evidence of this kind to cases in which character is, in

"[i]f the defendant offers evidence of his reputation for good character, the government may rebut by evidence that his reputation is bad. This evidence, however, is limited to testimony concerning reputation only. Proof of specific acts of misconduct is still not admissible." *United States v. Davenport,* 449 F.2d 696, 699 (5th Cir. 1971); *Accord, Eley v. United States,* 117 F.2d 526 (6th Cir. 1941).

■ The government's entire case against Wiley was dependent on the testimony of Dean. Thus the credibility of Wiley and Dean were important issues for the jury to decide. Under such circumstances, any evidence which improperly suggested to the jury that Wiley was involved in other unlawful activity could only be prejudicial. While we decline to hold that the error reached constitutional proportions, we are likewise unable to hold that it was harmless within the meaning of F.R.Cr.P. 52(a).

■ A number of other claims of prosecutorial misconduct are made on behalf of both defendants. Upon our careful review of the record, we are unable to say that any one of them was of sufficient import by itself to deprive either defendant of a fair trial. And with respect to O'Donnell, we have, after careful examination, concluded that their impact if any was slight indeed, and would not have affected the outcome of the trial as to him. Because we must remand the case for retrial as to Wiley, however, some further comment upon these claims is necessary.

Appellants claim that the Assistant United States Attorney exceeded the bounds of propriety in arguing to the jury in closing argument that he had no voice in the sentencing procedure and that "the sentencing is exclusive, 100%, the province of the court". This argument was made to counter the inference, advanced by the defense, that Dean's testimony was flavored by an expectation that his cooperation at the trial would be remembered when he was sentenced on other charges to which he had already pled guilty.

■ Although the record does relate testimony by Dean that he received no promises of leniency nor any special favors for his cooperation, the Assistant United States Attorney, in the closing argument stated:

Now at this point Sherman Dean has been trying to make a deal, saying look I'm willing to give you all this stuff but it's got to be worth something to you, could you dismiss, could you give me this sentence. Nothing, Sherman, nothing, we don't need you, you are a dirty liar, and he said he got mad at me because I told him again repeatedly that if anybody else had offered him anything they were lying, that they didn't have the authority, and if you want to take a chance on it [1787] you go on, but if you lie, Sherman, you are going in the hole, you are going to be that much worse off, and if you hold back one thing on anybody, I don't care if it is you mother and father, if it is your little sixteen year old boy, that is going to prison, if you're not ready to tell everything don't tell anything at all.

And so he got upset, and he expected a little deal or tradeouts here and there, and nobody would deal, but he decided to do it anyway, he had nothing to lose and something to hope for.

It was improper for the Assistant United States Attorney to expand Dean's simple denial of promises into a detailed account of a conversation which finds no support in the record. The conversation "may, or course, represent some extrajudicial knowledge of the prosecutor. But even so, he is not privileged to testify in the guise of a closing argument." *United States v. Peak,* 498 F.2d 1337, 1339 (6th Cir. 1974).

■ We also find objectionable the unsupported innuendo by the Assistant United States Attorney in his closing argument

the strict sense, in issue and hence deserving of a searching inquiry. When character is used circumstantially and hence occupies a lesser status in the case, proof may be only by reputation and opinion. These latter methods are also available when character is in issue. This treatment is, with respect to specific instances of conduct and reputation, conventional contemporary common law doctrine."

that Dean had testified in two other trials and that his testimony had been accepted by the juries in those cases, thus bolstering his credibility in the case at bar.

"I wonder what the other two juries thought about Mr. Dean's testimony, remember that. There is no proof in this record, I can't tell you about what the outcome of trials have been where Mr. Dean has testified since 1972 since he gave his statement. He has been on the witness stand at the bombing trial for the government. How did those juries react to Mr. Dean's testimony?"

■ These arguments and others by the prosecution, particularly how the jury should proceed in its deliberations and the impending doom of the federal witness protection plan, and the comment that "if this man goes free you have chalked up one point for the criminal" can only be characterized as an excess of prosecutorial zeal bordering on reversible error. While consideration of the totality of the prosecutor's arguments has had a bearing upon our decision to reverse Wiley's case, we are unable to say that O'Donnell's substantial rights were affected. There is at least some justification for the argument concerning the witness protection plan from the government proof in the record that O'Donnell had sought to procure the elimination of Dean to prevent his testifying. The challenged testimony about the stolen goods was prejudicial only to Wiley. Finally, the proof of O'Donnell's complicity was convincingly corroborated by other evidence and did not depend solely upon Dean's credibility.

■ Both Wiley and O'Donnell claim numerous other errors by the trial court, only two of which we feel warrant any further comment. Both claim that they were unduly restricted in their cross examination of Sherman Dean. A review of the record satisfies us that the district judge did not abuse his discretion in limiting what was essentially redundant and argumentative questioning of the witness. Appellants also claim that they should have been permitted to introduce as evidence the Jenks Act statements of Dean to the authorities

and the prior inconsistent statements of Dean made to certain prisoners in jail. The trial court did allow the foregoing to be used in impeachment, but held the statements inadmissible as substantive evidence. We agree. Appellants' reliance upon *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) is misplaced. In *Green* the Court held that a California statute permitting the introduction of a prior inconsistent statement as substantive evidence when the declarant is available for cross examination at trial is not violative of the Sixth Amendment right of confrontation. We do not read *Green*, however, as in any way imposing an affirmative obligation upon the federal or state courts to adopt a similar expansion of the hearsay rule. The rule in this circuit is that inconsistent statements are admissible only for purposes of impeachment and are not admissible as substantive evidence. *United States v. Lester*, 491 F.2d 680 (6th Cir. 1974).

■ O'Donnell also contends that there was a variance between Count IV of the indictment and the proof which was fatal to the conspiracy charge against him. The challenged language of the indictment was:

"The object of said conspiracy . . . was to burn and destroy a houseboat . . . owned by the defendants . . ."

This language, claims O'Donnell, indicates a charge that he was a co-owner of the houseboat in question, whereas the proofs on trial clearly establish that Wiley and his wife were the sole owners. However, the variance was insignificant, especially when read in the context of other counts of the indictment incorporated within Count IV. It cannot be said to have been material nor prejudicial in any way either to the preparation of the defense or the jury's understanding of the charge. *United States v. Gobel*, 512 F.2d 458 (6th Cir. 1975); *United States v. Mills*, 366 F.2d 512 (6th Cir. 1966).

Accordingly the judgment of conviction of the defendant O'Donnell is affirmed and the judgment of conviction of the defendant Wiley on both counts of the indictment

is reversed and the cause remanded to the district court for new trial.

## ORDER ON DENIAL OF REHEARING

Before WEICK and ENGEL, Circuit Judges.*

In an opinion decided and filed February 25, 1976, this court reversed the conviction of appellant Wiley, primarily because the Assistant United States Attorney on two occasions prejudicially injected into the trial testimony that Wiley dealt with stolen jewelry. A number of other claims of prosecutorial misconduct were alleged and although we were "unable to say that any one of them was of sufficient import by itself to deprive either defendant of a fair trial", we concluded that since we had to remand the case for retrial as to Wiley, some further comment upon the claims was necessary.

The United States in its petition for rehearing strongly challenges the court's treatment of these other claims of prosecutorial misconduct and cites numerous references to the record which it claims justify the propriety of the several arguments to the jury which we in our original opinion concluded were either excessively zealous or without support in the record.

It is claimed that the Assistant United States Attorney's closing argument to the jury which recalled his conversation with Dean rejecting the latter's efforts to obtain favorable treatment was supported by the record and that we erred in stating that the closing argument improperly expanded Dean's "simple denial of promises".

From a reappraisal of the record and of those portions thereof which the government has now cited, it must be admitted that there is support at least for some of the argument which we found objectionable, especially that pertaining to Dean's unsuccessful efforts to gain advantage from his cooperation. At the same time the purported verbatim quotations in the closing arguments do not appear in the record and where their substance does, it has been considerably embellished.

It is also claimed that our original opinion dealt unfairly with the government counsel in characterizing as unsupported innuendo certain arguments concerning Dean's testimony in other trials. While references to the record show that Dean was questioned closely by both government and defense counsel about his participation in other trials, the closing argument quoted in our original opinion speaks for itself. After acknowledging that there was no proof in the record about other unspecified trials, the counsel for the government implied to the jury his personal knowledge about facts outside of the record supporting the credibility of Dean. In effect he asked the jury to trust his evaluation of the extra-judicial facts.

We agree with the government's observation in its petition that this was indeed a difficult and hotly contested trial and no doubt the line between zealous advocacy and prosecutorial misconduct is at times hard to perceive upon a barren record and from the more remote perspective of appellate review. Nevertheless our careful examination of the entire record here and our re-examination of the citations contained in the petition for rehearing do not persuade us that a different result should be reached, and accordingly, the petition for rehearing is denied.

---

* The Honorable William E. Miller, Circuit Judge, who participated in the original opinion, died on April 12, 1976, and did not participate in the decision contained in this order.