**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alexander CZARNECKI, Defendant-Appellant.**

**No. 76–1480.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 12, 1976.

Decided April 1, 1977.

Certiorari Denied May 31, 1977. See 97 S.Ct. 2652.

Neil H. Fink, Fink & LaRene, Detroit, Mich., for defendant-appellant.

Philip M. Van Dam, U. S. Atty., Detroit, Mich., Arnold G. Shulman, U. S. Dept. of Justice, Grosse Pointe Woods, Mich., for plaintiff-appellee.

Before CELEBREZZE, PECK and LIVELY, Circuit Judges.

PECK, Circuit Judge.

Defendant-appellant was found guilty by a jury of conspiracy to use extortion to collect an extension of credit, in violation of

18 U.S.C. § 894,[1] and was sentenced to three years imprisonment. Appellant was acquitted, however, on two other counts in the indictment, which had charged that he had used and had aided and abetted the use of extortionate means to collect an extension of credit, in violation of 18 U.S.C. §§ 894 and 2. Appellant appeals his conspiracy conviction. We affirm.

## I

At trial, one Edward Aranosian testified that, beginning in 1965 and stopping sometime in 1968 or 1969, he made horse bets with appellant. Bets were placed with him through the course of the week, and at the end of the week, losses and winnings would be settled up. By late 1968 or early 1969, as a result of losing bets, Aranosian became indebted to appellant in the amount of $1,654.

On October 22, 1969, Aranosian received a telephone call from an unidentified caller, later determined to be one Philip Wayne Berryman, who demanded repayment of a $4,000 debt. After the call, Aranosian learned from his wife and daughter that earlier in the evening, a shot had been fired through the front window of Aranosian's home. That same night, another phone call was received from Berryman, who again demanded the money and threatened to blow up Aranosian's house unless the debt was paid.

On October 23, 1969, Berryman called (this time giving the alias "Phil Harris") and told Aranosian to take the money to "Al." Aranosian then called appellant, and they discussed the exact amount owed. The next day, October 24, 1969, Aranosian took the proceeds of a bank loan to appellant's place of business and paid the debt.

Similar events occurred with respect to one Luis Salas, who had accepted bets from Aranosian and appellant. Salas had become indebted to appellant as a result of lost wagers and had made payments on the debt after receiving threats from Berryman.

Berryman testified at trial under a grant of immunity and admitted that, at the time he was giving his testimony, he was incarcerated on a Michigan State charge of conspiracy to commit unarmed robbery. He also admitted that he had been convicted of first degree murder, although that conviction had been recently reversed on appeal. Berryman testified that appellant had hired him and Ronald Burnette in October, 1969, to collect gambling debts owed to appellant, and that he had made the threatening phone calls to Aranosian and Salas. Berryman said that he told appellant that once hired to collect the debts owed that he would, if necessary, kill the debtor. Berryman was asked by government counsel if he had done any work for appellant besides collections, and Berryman replied that he had.

At this point in the trial, defense counsel moved for a mistrial. After hearing argument from the attorneys in absence of the jury, the judge denied the motion. The judge did offer to give a curative instruction to the jury concerning the testimony of Berryman as to his other employment by appellant, but defense counsel did not accept the offer.

At the completion of the government's case-in-chief and after the defense rested, appellant moved for acquittal on the ground that there was not sufficient evidence presented to prove that there had been an extension of credit as defined by 18 U.S.C. §§ 891 and 894. The motions were denied. The district court also denied defense requested jury instructions concerning the prerequisites of an extension of credit and the possibility of a compromise verdict.

---

1. 18 U.S.C. § 894(a):

    (a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means

    (1) to collect or attempt to collect any extension of credit, or

    (2) to punish any person for the nonrepayment thereof, shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

## II

Appellant's main argument on appeal is that the district court committed reversible error when it denied his motion for a mistrial after testimony was given by Berryman concerning his employment by appellant in work other than collections. The testimony was elicited in the course of direct examination by the government.

Q. Mr. Berryman, prior to engaging in the collection effort on Mr. Czarnecki's behalf, had you worked for him before?

A. No.

Q. Did you work for him on anything else besides collections?

A. Yes.

Q. Did you get paid for those efforts?

A. Yes.

Q. By Mr. Czarnecki?

A. Through him, yes.

Appellant's contention is that the jury could only infer from this testimony that appellant had hired Berryman to commit other crimes and that such evidence had the direct effect of influencing the jury to convict for reasons other than for guilt of conspiracy to use extortionate means to collect an extension of credit.

We do not agree. The primary defense of appellant at trial was that he had not hired Berryman to extort Aranosian, but that someone else had. Appellant did not dispute the fact that Berryman had used extortionate means against Aranosian. The government thus sought to introduce evidence that Berryman had other employment relations with appellant than those charged as criminal in the present case. The existence of another employment relationship had probative value with respect to the issue of who, in October, 1969, had hired Berryman to use extortionate means against Aranosian. Because the government did not elicit direct testimony that other associations between appellant and Berryman were of a criminal nature, we conclude that the probative value of the evidence outweighed any prejudicial impact which might arise from such inferences as the jury might draw. Federal Rule of Evidence 403.

In *United States v. Splain*, 545 F.2d 1131 (8th Cir. 1976), the Eighth Circuit was presented with a similar problem. The defendant in that case contended that the district court had committed reversible error in refusing to grant a mistrial after the defendant had been prejudiced by a statement given by a government witness in response to an inquiry by the prosecutor about prior business dealings between the witness and the defendant. As in the present case, the statement in *Splain* would be read as implying that the defendant had been involved in previous crimes. The Eighth Circuit rejected the defendant's argument that the rule against introducing evidence of other crimes was applicable and concluded that the contested statement was not more prejudicial to the defendant than probative of issues at trial. That court also noted that the potential taint from the contested statement could have been cured by a cautionary instruction, which defendant in that case had (as here) refused.

In the present case, the jury could have inferred from Berryman's bad character that appellant's other associations with Berryman were criminal in nature. As in *Splain*, however, the prejudicial effects from inferences suggested by Berryman's testimony could have been cured by cautionary instructions, which appellant refused, and did not present a situation, as in *Maestas v. United States*, 341 F.2d 493 (10th Cir. 1965), of prejudice so great as not to be erasable from the minds of the jurors.

Even if we were to accept appellant's argument that Berryman's testimony amounted to evidence that appellant had hired Berryman to commit other crimes, we would still conclude that the evidence was admissible under Federal Rule of Evidence 404(b). The Rule states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportuni-

ty, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The district court judge, in the exercise of his discretion, could admit the evidence as probative of the identity of Berryman's employer when Berryman was hired to extort collection from Aranosian.

■ We are mindful that before the enactment of Federal Rule of Evidence 404(b), evidence of other crimes or bad acts generally had to be substantially similar and near in time to the offense charged, had to be in issue, and had to have more probative value than prejudicial impact. *United States v. Ring*, 513 F.2d 1001, 1004 (6th Cir. 1975). These considerations are still of assistance when interpreting Rule 404(b), *United States v. Largent* and *United States v. Higdon*, 545 F.2d 1039 (6th Cir. 1976); however, it would be contrary to the intended operation of the rule for these considerations to constitute a rigid checklist in every case. The Advisory Committee Note to Rule 404(b) states that "[n]o mechanical solution is offered" to the question of determining when the rule permits the introduction of evidence of other crimes or bad acts. The district court judge is granted a broad discretion in ruling on the admissibility of evidence under Rule 404(b). *United States v. Bloom*, 538 F.2d 704, 708 (5th Cir. 1976); *United States v. Bledsoe*, 531 F.2d 888, 891 (8th Cir. 1976); *United States v. Moss*, 544 F.2d 954, 960 (8th Cir. 1976). Moreover, the legislative history of the rule suggests that there be a greater emphasis on admissibility of such evidence. H.R.Rep. 93–650, 93rd Cong., 2d Sess. 7 (1974), 1974 U.S.Code Cong. & Admin.News, pp. 7075, 7081.

■ Relevant evidence under Rule 404(b) should, therefore, not always be excluded because it does not qualify under a similarity requirement. *United States v. Riggins*, 539 F.2d 682 (9th Cir. 1976). Other bad acts disclosed by evidence would have to be similar only if a basis for the relevance of the evidence is similarity. *United States v. Riggins, supra.*

Recent case law under Rule 404(b) demonstrates that evidence of other bad acts, dissimilar to the offense charged, can be properly admitted. In *United States v. Johnson*, 542 F.2d 230 (5th Cir. 1976), the Fifth Circuit, in the process of affirming a conviction for violation of a federal statute forbidding the pointing of a gun at FBI agents in an escape effort, held that evidence of the defendant's felony record and of an arrest warrant issued for the defendant was admissible to show defendant's motive in resisting arrest. In *United States v. Barrett*, 539 F.2d 244 (1st Cir. 1976), the First Circuit, in the process of rejecting a defendant's argument that the district court's admission into evidence of the defendant's knowledge of burglary alarms was prejudicial and irrelevant to the charge of transporting and selling stolen stamps, held that such evidence helped identify defendant as one of the guilty parties. In *United States v. Moss, supra*, 544 F.2d 954, the Eighth Circuit held that evidence that the defendant, charged with robbery, was in possession of a gun that was unused during the robbery, was admissible as probative of the defendant's intent.

■ Thus, when reviewing a district court's ruling on the admissibility of evidence under Rule 404(b), the central question is whether the trial court abused its discretion in determining that the probative value of the evidence outweighed its potential prejudicial effect. *United States v. Riggins, supra*, 539 F.2d at 684; Federal Rule of Evidence 404(b), Advisory Committee Note. We conclude that the district court judge did not abuse his discretion in this case.

At trial the main issue was whether appellant was the one who had hired Berryman to use extortionate means against Aranosian to collect an extension of credit. Testimony that appellant had hired Berryman with respect to other work besides collections was probative of that issue, even though it involved an employment relationship dissimilar to the one charged as violative of federal law in the present case. Also the employment had to have occurred near in time to the October, 1969, extortion effort against Aranosian because Berryman

first met appellant in 1969 and had first worked for him in October, 1969. The testimony was not more prejudicial than probative since it could only imply vague notions that appellant was a party to other mischief, unlike the direct evidence of other bad acts in *United States v. Jackson*, 418 F.2d 786 (6th Cir. 1968) (one count of a four count indictment dismissed after the jury had heard evidence as to the dismissed count), and in *United States v. Smith*, 403 F.2d 74 (6th Cir. 1968) (the fact of defendant's incarceration presented to the jury). More specific instances of bad acts committed by Berryman while in the employ of appellant would have been necessary to establish the prejudice that would have outweighed the probative value of the contested testimony in this case. See *United States v. Barrett, supra*, 539 F.2d at 249.

This holding is in harmony with *United States v. Wiley*, 534 F.2d 659 (6th Cir. 1976), even putting aside the fact that in *Wiley* the Federal Rules of Evidence were not applicable. In *Wiley*, this Court held that the district court committed reversible error when it admitted into evidence testimony that the defendant dealt in stolen rings with another person, a matter unrelated to the charges against the defendant of mail fraud and conspiracy to commit mail fraud. This Court determined that in *Wiley* the prejudice to the defendant from the information that defendant's relationship with another person was criminal outweighed the need of the government to show the specific nature of that relationship. In the present case, the government avoided showing the specific nature of the relationship between appellant and Berryman so that there would not be a prejudicial impact on the appellant which would outweigh the probative worth of the evidence that appellant had hired Berryman with respect to other matters.

### III

Appellant next contends that the district court committed reversible error by denying his motion for judgment of acquittal and proposed jury instruction concerning the statutory element of "extension of credit." He strenuously urges that 18 U.S.C. § 894, as a criminal statute, should be read narrowly and that read into the statute should be a strict commercial law understanding of the phrase "extension of credit." Appellant would thus impose on that phrase three requirements: (1) a bilateral agreement to extend the debt, (2) a definite debt and a specific extension period, and (3) consideration supporting the extension agreement. Appellant would have this Court reverse his conviction because the proof did not show the existence of all three requirements and because a jury instruction did not reflect the specific requirement of a bilateral agreement to defer paying a debt.

■ We do not agree. The gambling relationship between Aranosian and appellant was covered by the phrase "extension of credit" in 18 U.S.C. § 894.

Congress has defined in 18 U.S.C. § 891(1) what it means to extend credit under 18 U.S.C. § 894. 18 U.S.C. § 891(1) provides that:

> For purposes of this chapter:
>
> (1) To extend credit means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred.

In this definition, Congress excluded the elements that appellant would read into the phrase "extension of credit."

Appellant extended credit to Aranosian within the meaning of 18 U.S.C. § 891(1). Aranosian and appellant placed bets on horse races. When a horse race was over, a debt was created, one way or the other. The two men expressly agreed that payment would be made at a time after the conclusion of the horse race, and thus appellant agreed to defer payment on a debt. See *United States v. Briola*, 465 F.2d 1018 (10th Cir. 1972), *cert. denied*, 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 688, *reh. denied*, 410 U.S. 960, 93 S.Ct. 1416, 35 L.Ed.2d 695 (1973); *United States v. Keresty*, 465 F.2d

36 (3d Cir.), *cert. denied*, 409 U.S. 991, 93 S.Ct. 340, 34 L.Ed.2d 258 (1972). The district court was correct in denying appellant's motion for acquittal.

■ Appellant's attack on a jury instruction concerning the phrase "extension of credit" is also without merit. First, the alleged error is not properly before this Court because the defense did not preserve its objection under Rule 30, Fed.R.Crim.P. Second, even if the question were before this Court, the record shows that the district court did not instruct the jury in a way that gave the jurors an incorrect impression of what they needed to find for an extension of credit as defined by 18 U.S.C. § 891(1).

### IV

Appellant's last argument concerns three questions that the jury asked on the second day of its deliberations:

1. Sir, are the three counts separate?
2. Can we hear the ground rules for the three counts?
3. If charged with Count I, are Counts II and III an automatic conviction?

The district court instructed the jury that the counts were separate, that an independent determination had to be made with respect to each count, and that a verdict on one count was not controlling as to any other count. After the jury had retired, appellant requested that the district court give supplemental instructions forbidding or discouraging compromise verdicts. The district court refused. Appellant charges that the refusal constitutes reversible error.

■ We do not agree. Appellant does not dispute the correctness of the district court judge's responses to the jury's questions, and we cannot conclude that the jury in the present case was otherwise confused or had any erroneous impressions, as in *United States v. Petersen*, 513 F.2d 1133, 1136 (9th Cir. 1975). Thus, there was no abuse of discretion on the part of the district court judge in declining to give any supplemental instructions, *United States v. Clark*, 506 F.2d 416, 419 (5th Cir. 1975),

*United States v. Blazewicz*, 459 F.2d 442, 443 (6th Cir. 1972), especially in view of the judge's concern that additional instructions could have had improper results. Cases that involve misleading instructions given in response to specific questions asked by juries, such as *Bollenbach v. United States*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1945), are inapposite.

Affirmed.