UNITED STATES of America,
Plaintiff-Appellee,

v.

Ray T. DAVIS (80–5015)

and

Raymond Wallace (80–5023),
Defendants-Appellants.

Nos. 80–5015, 80–5023.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 2, 1982.

Decided May 13, 1983.

James R. Cataland, Youngstown, Ohio, Stewart I. Mandel, Jerome Weiss (argued), Cleveland, Ohio, Jerome J. Metz, Jr. (argued), Cincinnati, Ohio, for defendants-appellants.

James R. Williams, U.S. Atty., Ralph Cascarilla (argued), Asst. U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Before ENGEL and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Appellants Ray T. Davis and Raymond Wallace were convicted of conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, arising out of activities occurring while each was a member of the Mahoning County, Ohio Sheriff's Office. Davis, Sheriff of Mahoning County, was charged with soliciting and accepting bribes from various individuals and for violations of the Hobbs Act, 18 U.S.C. § 1951 *et seq.* Wallace, a sergeant in the Traffic Division, was convicted of accepting bribes in exchange for performing certain favors in relation to his duty. Both appellants appeal their convictions, arguing that the indictment improperly joined their cases and that the trial judge abused his discretion by not granting their requests for separate trials. Davis contends there was no jurisdiction to bring a Hobbs Act case against him, and that certain evidence adduced at trial was inadmissible. Wallace separately argues the district judge committed reversible error by sentencing him to a Hobbs Act violation in the judgment, a crime for which he was not charged. After careful consideration of each argument presented, we affirm the district court.

The facts as adduced at trial and read in a light most favorable to the government are as follows. Davis, the elected Sheriff of Mahoning County, through threats and extortion forced a number of his deputies to make monthly "contributions" to a special "flower fund", a war chest used by Davis in

his political campaigns. Included among these deputies were several receiving funds under the federal Comprehensive Employment and Training Act (CETA) and the Emergency Employment Act (EEA). To secure the contributions Davis threatened the deputies with possible loss of job assignments or dismissal from employment. In addition, Davis through similar tactics forced several deputies to perform labor at his residence in Canfield, Ohio. Tasks performed included construction of a swimming pool and related facilities. Wallace conducted a program providing escorts for trucks and other vehicles which failed to comply with state vehicle weight and size limitations. Escorts were provided by Sheriff's Department automobiles. On several occasions Wallace escorted vehicles to the state line. In return for these services Wallace received bribes consisting of checks from those escorted.

On July 5, 1979 a Mahoning County grand jury returned a four-count indictment naming Davis and Wallace.[1] In Count I the indictment charged each appellant with conspiracy in violation of RICO for conducting the Mahoning County Sheriff's Office through a pattern of racketeering. Three other counts in the indictment spelled out the actions involved in the conspiracy, including acts by Davis in violation of the Hobbs Act, 18 U.S.C. § 1951 *et seq.*

Before trial both appellants claimed misjoinder and sought separate trials. Without comment the trial judge overruled their motions and set a trial date.

At trial, over the objection of defense counsel, the court allowed Louis Jurich to testify concerning work he had performed at the residence of appellant Davis in 1975. This particular instance of work at the Davis home was not included in the acts charged against Davis in the indictment.

After a thirteen-day trial the jury returned guilty verdicts on all counts against Davis and Wallace. Each appellant separately appealed. Appellants' appeals have been consolidated for purposes of oral argument and this opinion.

We initially turn to the question of whether the indictment properly joined Davis and Wallace and whether the trial judge abused his discretion by overruling their motions for separate trials. Questions of joinder in a multiple-defendant situation are governed by Rule 8(b) of the Federal Rules of Criminal Procedure. It provides:

Rule 8. Joinder of Offenses and of Defendants.

. . . .

(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

■ The key inquiry, therefore, is whether the counts stated in the indictment arise from the same transaction or series of acts. In the indictment both appellants were charged with a RICO conspiracy under § 1962(c).[2] This conspiracy consisted of both appellants participating in an "enterprise," the Mahoning County Sheriff's Office, through a pattern of racketeering. Courts have held a legitimate organization may constitute an enterprise for purposes of RICO. *United States v. Turkette*, 452 U.S. 576, 580–81, 101 S.Ct. 2524, 2527, 69 L. Ed.2d 246 (1981); *United States v. Thompson*, 685

---

1. Several others were originally indicted along with Davis and Wallace including Edward Martin, John Masi, Sr., and Louie DePaul. Each subsequently pled guilty and became prosecution witnesses at trial. The indictment was modified to encompass only Davis and Wallace.

2. 18 U.S.C. § 1962(c) provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

F.2d 993, 994–95 (6th Cir.) (en banc), *cert. denied,* —— U.S. ——, 103 S.Ct. 494, 74 L.Ed.2d 635 (1982) (use of state governor's office as the "enterprise" for the purposes of RICO permissible though not preferred due to its potential adverse effect upon federal-state relations). We therefore hold the Mahoning County Sheriff's Office constituted an "enterprise" under RICO in this case.

■ Under § 1961(5) a "pattern of racketeering" must consist of at least two predicate acts. In this case that requirement is met by the actions of Davis running his flower fund and by the illegal escort service conducted by Wallace. Given that a pattern of racketeering existed, it is clear the conduct of both parties advanced this pattern through their actions. In such a setting courts have permitted joinder equating the pattern of racketeering with a "transaction or series of acts." *United States v. Thompson, supra; United States v. Sutton,* 642 F.2d 1001, 1017, 1036–37 (6th Cir.1980) (en banc), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3144, 69 L.Ed.2d 995 (1981). *Cf. United States v. Turkette, supra.*[3] We hold, therefore, that where two defendants are charged with a RICO conspiracy it is not improper to join such defendants and include the individual illegal actions that constitute the pattern of racketeering alleged.

We next turn to the appellants' concurrent argument that the trial judge abused his discretion by not granting them separate trials. They allege that since they were tried together each was prejudiced in the eyes of the jury by evidence introduced against the other.

■ Under Rule 14 of the Federal Rules of Criminal Procedure the basic question is whether substantial prejudice would occur to an individual defendant tried jointly with another. Courts interpreting this standard have placed a heavy burden on a defendant requiring a strong showing of prejudice. For instance, such a burden must be met in support of assertions as to jury confusion or inability to separate the evidence produced against each individual defendant. *Opper v. United States,* 348 U.S. 84, 94, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *United States v. Bright,* 630 F.2d 804, 812 (5th Cir.1980); *United States v. Mardian,* 546 F.2d 973, 977 (D.C.Cir.1976) (en banc). The potential prejudice shown is balanced against the competing societal goals of efficient and speedy trials. *Opper, supra; Bright, supra; Mardian, supra.* We think neither Davis nor Wallace comes close to meeting the requisite showing for severance. The jury could easily separate the evidence concerning each defendant. There is nothing in the record to indicate the jury was in any way confused or misled by the evidence presented. Further, many of the witnesses at trial testified concerning the activities of both Davis and Wallace. Two separate trials would have resulted in undue added expense and time, as well as inconvenience if not hardship on the witnesses. In sum, we think the trial judge did not abuse his discretion in denying both appellants' motions for separate trials.

■ Davis contends that the prosecution failed to demonstrate the requisite effect upon interstate commerce under the Hobbs Act and that the trial judge erroneously admitted evidence of alleged criminal conduct not included in the indictment.[4] We

---

**3.** This holding is bolstered by the fact that each appellant was aware of the actions taken by the other. Davis clearly was aware of the escort service since he shared in its financial returns. The facts indicate Wallace was at least tangentially aware of the extorted labor performed at Davis's home and of the flower fund.

**4.** Davis also contends that the prosecutor improperly pursued this case under RICO and the Hobbs Act rather than under the more specific state statutes. We disagree. Absent specific statutory limitations or a course of discriminatory procedure, prosecutors are free to prosecute a case under any appropriate statute. *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). We hasten to point out, however, that questions of federal-state relations should be carefully considered by a federal prosecutor so as to minimize unnecessary friction between the two arms of justice in a traditionally state-policed area.

disagree with both contentions. We further find no error in connection with the jury instructions.

■ The Hobbs Act proscribes threats and extortions which obstruct, delay, or affect interstate commerce. Courts have broadly construed the meaning of "affect" to the extent permissible under the Constitution's commerce clause. *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). The Sixth Circuit has adopted the de minimis test in which only a minimal impact upon interstate commerce is necessary to invoke the act. *United States v. Richardson,* 596 F.2d 157, 160 (6th Cir.1979); *United States v. Harding,* 563 F.2d 299, 302 (6th Cir.), *cert. denied,* 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1977) (where executive director of a state real estate commission illegally assisted licensee in passing real estate examination, fact that real estate quotations by brokers often advertise out of state sufficient effect on interstate commerce for Hobbs Act purposes). Thus the requisite impact is present here. The record establishes that federal funds received by several of the deputies from the CETA and EEA programs were diverted into the Sheriff's "flower fund." Such funds plainly were in interstate commerce. Further, the facts indicate the materials used in construction ·work at the Davis residence were in the flow of interstate commerce. *United States v. Richardson, supra.* These showings were clearly sufficient to satisfy the jurisdictional requirement.

■ We further hold the trial judge's admission of Jurich's testimony was permissible within Rule 404(b) of the Federal Rules of Evidence. In general, evidence showing criminal propensity based on other conduct is excluded since a jury might convict a defendant for that conduct rather than for the criminal conduct with which he stands charged. Rule 404(b) specifies, however, that if evidence is used for other reasons, it may be admissible. *United States v. Beechum,* 582 F.2d 898, 911–12 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); *United States v. Czarnecki,* 552 F.2d 698, 702 (6th Cir.), *cert. denied,* 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977). If a proponent seeking admission of evidence specifies an enumerated ground for admission, the trial judge must determine whether the evidence is relevant to that particular issue claimed, and whether it would satisfy the requisite showings of Rule 403 of the Federal Rules of Evidence. Our role on appeal is to determine whether the district judge abused his discretion by admitting the proffered evidence. *Czarnecki, supra.* We think the district judge did not abuse his discretion when he admitted Jurich's testimony to show Davis's like intent to extort labor from his deputies. Though the chance of prejudice is always present in a 404(b) situation, the district judge greatly reduced this problem by giving the jury a limiting instruction informing them to use the testimony of Jurich only in determining intent by Davis. *Czarnecki, supra; United States v. Ring,* 513 F.2d 1001 (6th Cir.1975).

■ Further we dismiss the argument by appellant Wallace that his convictions should be reversed due to clerical errors in his judgment. Apparently the judgment described Wallace's violation as a Hobbs Act violation under § 1951 rather than a RICO violation under § 1961. The sentencing judge had presided at trial and was plainly not influenced in any manner by this technical error. Wallace has made no showing of injury resulting from this minor clerical mistake. We think the provisions of Rule 36 of the Federal Rules of Criminal Procedure are plainly applicable.

In sum, finding no merit in any of the arguments raised by either appellant in this case, we affirm the judgment of the district court in full.

MERRITT, Circuit Judge, dissenting in part.

I respectfully dissent from that portion of the majority opinion holding that the defendant Wallace was properly joined under Fed.R.Civ.P. 8(b). I would reverse his conviction and remand for a separate trial.

Count I of the indictment here charged both defendants with substantive RICO violations, and with the predicate act of accepting bribes from individuals outside the Sheriff's department in return for using department vehicles to escort overweight or oversize loads. Sheriff Davis was separately charged in Counts II through IV with extorting money (kickbacks) and labor (on his property) from his departmental employees. The majority holds that the existence of a substantive RICO count in the indictment is enough by itself to bring the various counts of the indictment within the "same series of acts or transactions" and hence to justify joinder of defendant Wallace under Rule 8(b). The rationale seems to be that because all the crimes charged are predicate acts of racketeering involving the same enterprise (the Sheriff's office) they constitute a "series of acts or transactions" despite the lack of connection between the various acts. I do not agree with such a broad interpretation of either the RICO statute or the joinder provisions of Rule 8(b).

Several courts have allowed prosecutors to use a substantive RICO count to join in one indictment what would otherwise be separate, unjoinable offenses by different individuals. *E.g., United States v. Weisman,* 624 F.2d 1118 (2d Cir.1980) (inclusion of a substantive RICO count in indictment meets 8(b) requirement that joined offenses be in the same series of acts or transactions). There is nothing wrong with such joinder where there is a connection between the various acts alleged, or evidence that all the defendants were aware of or agreed to the scope of the racketeering activity undertaken. For example, the joinder of Davis and Wallace for trial on the charge of bribing outsiders for the escort service was clearly proper, since there was a series of related acts in which both Davis and Wallace participated. But as the Fifth Circuit pointed out in *United States v. Sutherland,* 656 F.2d 1181, 1192–3 (1981), discussing RICO conspiracies:

[T]he language of [an earlier case] explains that what ties these conspiracies together is not the mere fact that they involve the same enterprise, but is instead—as in any other conspiracy—an "agreement on an overall objective." ... [The defendants] were properly tried together under RICO only because the evidence established an agreement to commit a substantive RICO offense, *i.e.* an agreement to participate in an enterprise through a pattern of racketeering activity.

In its brief, the Government repeatedly argues that Wallace and Davis *agreed* to conduct the Sheriff's office through racketeering activity. Yet there was no conspiracy indictment here, and no proof that Wallace agreed to or participated in any racketeering activities other than the escort bribery scheme. If deputy Wallace had any connection with Davis' extortion scheme it was as a victim. The fact that both the escort service and Davis' extortion were accomplished through the Sheriff's office as an enterprise is not sufficient to create a "series of acts" out of what would otherwise be unrelated offenses.

To further illustrate the problem, suppose the Sheriff's office as an enterprise uses an employee for purposes of extortion and, unknown to the employee, uses a prisoner for robbery and burglary. The employee should not be joined in a trial for robbery and burglary in such a case even though the overall enterprise, the Sheriff's office, is the same. Otherwise, government prosecutors could name the state as the enterprise and join for trial disparate and unconnected offenses of employees throughout the state. The Fifth Circuit also highlighted the problem using itself as an example:

For example, assuming that our own court—the United States Court of Appeals for the Fifth Circuit—was alleged to be the enterprise (as we assume would be proper under our analysis), we question whether an agreement to bribe a court official in El Paso, Texas could be part of the same conspiracy as an unrelated agreement to use a judicial office for illicit profit-making purposes in Fort Lauderdale, Florida, when neither the El Paso nor the Fort Lauderdale conspira-

tors knew of the existence of the other group.

*United States v. Stratton,* 649 F.2d 1066, 1073, n. 8 (5th Cir.1981).

I would hold that absent evidence that a defendant implicitly consented to, participated in, or was connected with the full scope of racketeering activities undertaken in furtherance of the enterprise, joinder of unrelated predicate acts based on a substantive RICO count violates Rule 8(b).