842 F.2d 333
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leigh M. COLGATE, Defendant-Appellant.
 No. 87-5780.
 United States Court of Appeals, Sixth Circuit.
 March 17, 1988.
 
 Before WELLFORD and DAVID A. NELSON Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendant in this criminal case, Leigh Colgate, was found guilty of violating 18 U.S.C. Sec. 1014 by knowingly making false statements to a federally insured bank in order to obtain loans. On appeal, he argues that the district court erred in its rulings on certain questions of evidence and in convicting him on four counts when only three documents were involved. Upon review, we conclude that the defendant's contentions are without merit.
 
 
 2
 The defendant owns a used car business, Colgate Auto Sales, in Louisville, Kentucky. In 1980 he entered into a floor plan agreement with the First National Bank of Louisville, an institution insured by the Federal Deposit Insurance Corporation. The defendant could obtain an advance of funds, under the agreement, by submitting to the bank a security agreement with an attached promissory note containing a description of the units to be financed, the net invoice price, and the amount financed. Each security agreement contained this statement: "The debtor warrants that title to the collateral is vested solely in the debtor free and clear of any and all liens or encumbrances of any kind."
 
 
 3
 The defendant's financial condition began to deteriorate in mid-1985, and his checking account was continuously overdrawn thereafter. As a result of his financial difficulties, and in order to obtain loan funds that would not otherwise have been advanced to him, he began listing on security agreements cars that he did not own.
 
 
 4
 On June 12, 1985, the defendant submitted to the bank a security agreement with an attached promissory note for $6,502. One of the two cars listed on the security agreement was a 1982 Chevrolet Malibu. The bank advanced $4,522 on the security of the Malibu. The car was actually owned by Poor Boy Auto Sales of Murray, Kentucky, and not by the defendant.
 
 
 5
 On November 7, 1985, the defendant submitted a security agreement with a promissory note for $15,434. One of the five cars listed on this security agreement was a 1978 Oldsmobile Cutlass Supreme actually owned by Ann Swessel, the defendant's bookkeeper. The defendant was advanced $2,115 on the security of the Cutlass.
 
 
 6
 On November 19, 1985, the defendant submitted a security agreement with a promissory note for $32,309. Among the seven vehicles listed on this agreement were a 1984 Buick Limited, for which the defendant was advanced $7,650, and a 1983 Dodge Van for which he was advanced $7,245. Contrary to his assertion in the security agreement, the defendant did not own either of those automobiles. The Buick was owned by William Hendrickson, who worked for the defendant as a salesman. (Mr. Hendrickson later testified for the defendant as a character witness). The 1983 Dodge Van was owned by Troy Ryan, a body shop owner.
 
 
 7
 On January 15, 1986, during a meeting with the defendant's bookkeeper, Ann Swessel, the bank discovered that the defendant had been listing vehicles that he did not own. When Mike Byers, the bank's Vice-President for Corporate Affairs, went to the defendant's lot to check the inventory, he found only 22 cars; some 42 cars were listed on the defendant's floor plan papers. The bank repossessed the remaining cars, including the 1982 Chevrolet Malibu owned by Poor Boy Auto Sales.
 
 
 8
 The defendant was subsequently indicted and convicted on four courts of knowingly making false statements to an FDIC bank in violation of 18 U.S.C. Sec. 1014. He was sentenced to two years' imprisonment on each count, the sentences to be served concurrently. All but six months of each term of imprisonment was suspended, and the defendant was placed on five years' probation. The court also ordered restitution in the amount of $21,532, along with a penalty of $200.
 
 
 9
 On appeal the defendant argues that the district court erred in admitting evidence of the fact that only 22 cars were found on his lot when he had listed 42 cars on security agreements with the bank. Contending that this evidence was "irrelevant, prejudicial and confusing to the jury as to the true extent and nature of the acts alleged to be illegal," the defendant denies that the evidence showed any intent to make false statements. He also challenges the admissibility of this evidence on grounds that it was too remote in time, and he argues that the government should not have been allowed to refer to the evidence in closing argument.
 
 
 10
 We find that the evidence was properly admitted. It showed a common scheme or plan, and it was highly probative of the defendant's intent or motive. Similarity between acts is not necessarily required when evidence of the acts is introduced to show motive or knowledge. See United States v. Czarnecki, 552 F.2d 698, 702 (6th Cir.), cert. denied, 431 U.S. 939 (1977); United States v. Beechum, 582 F.2d 898, 911 n. 15 (5th Cir.1978), cert. denied, 440 U.S. 920 (1979). We reject the defendant's contention that the evidence was remote in time from the criminal acts; the bank discovered that 20 cars were missing from the lot only two months after the final criminal act was supposed to have occurred. When the evidence was admitted the court told the jury that the evidence could be considered "for a limited purpose and that is, as it may, in your judgment, relate to the motive or intent or lack of mistake on the part of Mr. Colgate with respect to the false statement making of which he is accused in this case."
 
 
 11
 At the end of the trial, the judge instructed the jury as follows:
 
 
 12
 "Now, during the course of the trial, as you know from the instructions I gave you then and you heard evidence of other acts of the defendant other than the time charged in the indictment in this case, you may consider such evidence, not to prove that the defendant did the acts charged in this case, but only to prove defendant's state of mind, that is that the defendant acted as charged in the case with necessary intent and not through accident or mistake."
 
 
 13
 The district court did not err in admitting the evidence with a limiting instruction. Because the evidence was properly admitted, the prosecution's reference to it in closing argument was not erroneous.
 
 
 14
 On appeal the defendant argues for the first time that counts 3 and 4 improperly charged separate false statements, the statements in question having been made in the same document. He cites several cases in which the court held that multiple false statements made in a single document constitute only one violation of 18 U.S.C. Sec. 1014. See, e.g., United States v. Pierce, 733 F.2d 1474, 1476 (11th Cir.1984).
 
 
 15
 The defendant has waived this defense. Fed.R.Crim.P. 12(b)(2) requires defenses and objections based on defects in the indictment to be raised before trial. See, e.g., United States v. Busard, 524 F.2d 72, 73 (5th Cir.1975), cert. denied, 426 U.S. 948 (1976). We note that because the defendant's sentences were to be served concurrently, his waiver will not result in additional prison time.
 
 
 16
 In his third assignment of error, the defendant contends that the government asked impermissible questions of two of his character witnesses, William Hendrickson and Detective William Riddle. The defendant argues that Hendrickson was asked to give a legal conclusion on the ultimate fact of the defendant's honesty, and he argues that the questioning of Detective Riddle exceeded the bounds of Fed.R.Evid. 405. We find that the district court did not abuse its discretion in allowing the questions.
 
 
 17
 Fourth, the defendant argues that evidence of the total amount owed on the promissory notes--$54,245--should not have been admitted because it served to confuse the jury as to the "enormity" of the allegedly criminal acts. We find this contention to be without merit.
 
 
 18
 Finally, the defendant argues that the district court erred in refusing to permit the testimony of an attorney who represented him in civil litigation with the bank. We find that this evidence was properly excluded as irrelevant. See United States v. Bell, 535 F.2d 886, 888 (5th Cir.1976) (excluding evidence that loans in question were being repaid).
 
 
 19
 AFFIRMED.