## State v. Barkley
*[Cite as 2 AOA 234]*

*Case No. CA7897*
*Stark County, (5th)*
*Decided March 12, 1990*

*4th Amend., U.S. Const.*
*R.C. 2923.03*
*R.C. 2925.03*
*Crim. R. 14*
*Crim. R. 41(C)*

MILLIGAN, J.

On March 1, 1989, at apartment 11, 800 Highland Park Drive, S.E., Canton, six men were arrested and ultimately charged with aggravated trafficking, conspiracy in cocaine, R.C. 2923.03 (A) (4).Five of the six were jointly tried and convicted as indicted.

These separate appeals challenge the trial court's rulings on suppression, severance, discovery, and weight of the evidence (including motion for acquittal).

The court granted the motion for separate trial of Terry Benson, and the appeal of his conviction is not herein considered.

In early 1989, officers received information that appellant Rinaldo Barkley was selling crack cocaine out of apartment 11 at 800 Highland Park, a three story, twelve unit apartment building.

Surveillance revealed people going to the apartment building, remaining a short while, and leaving. A tenant would part the drapes in the bedroom window and look out. Following the surveillance, undercover agents purchased crack cocaine from Apartment 11. They used a confidential informant who was wired and who purchased cocaine in the apartment. The identification as apartment number 11 was confirmed by an officer. Rinaldo Barkley was identified as the tenant. Stark County, Case Nos. CA-7897, 7891, 7885, 7894, & 7873.

A search warrant was obtained and, in addition to contraband, appellants Barkley, Strong, Calhoun, and Benson (separately tried) were arrested as they were leaving the apartment. A juvenile was found in the bedroom, and appellants Johnson and McGarrity were found hiding in a bedroom closet.

Following arrest, Barkley, McGarrity, Calhoun, and Johnson gave statements to police.

Following trial by jury, the five appellants were found guilty of conspiracy to aggravated trafficking and were sentenced to one and one-half year terms. Each appeals.

Because many of the assignments of error, although slightly different in language, deal with the same issues, we will deal with the issues separately. The assignments of error as postulated by each of the appellants are separately attached hereto and incorporated.

I

DID THE TRIAL COURT ERR IN
OVERRULING THE COLLECTIVE

## MOTIONS TO SUPPRESS STATEMENTS AND EVIDENCE OBTAINED AS A RESULT OF THE WARRANT SEARCH?

The question of whether the warrant issuing magistrate had probable cause is to be determined in this case by an examination of the affidavit. It was the only evidence presented to the magistrate.

The scope of the task of the issuing magistrate, as well as the standard of review, both by the trial court on the motion to suppress and by the appellate court upon appellate review, is clearly articulated in a recent decision of the Ohio Supreme Court.

1. In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* [1983], 462 U.S. 213, 238-239, followed.)

2. In reviewing the sufficiency of probable cause in support of cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (*Illinois v. Gates* [1983], 462 U.S. 213, followed.)

3. The Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. (*United State v. Leon* [1984], 468 U.S. 897, followed.)

*State v. George* (1989), 45 Ohio St. 3d 325, 544 N.E.2d 640, all three syllabi.

In the affidavit *sub judice*, the preamble to the assertion of facts (and the ultimate search warrant) narrow the focus of the search to the specific apartment number 11 at 800 Highland Park Drive, S.E. The recitation of nine operative facts identifies the building but does not specifically identify the apartment. The conclusion of the affidavit is "there is probable cause that a drug operation is being conducted at 800 Highland Park Drive, S.E. Skyland Terrace, Apartment 11, Canton, Stark County, Ohio . . . ."

As noted above, the specific warrant is limited to Apartment 11.

The issuing magistrate made a "practical, common sense decision whether, given all the circumstances set forth in the affidavit before him" that the drug activity and paraphernalia were located at 800 Highland Park Drive, S.E. and, based upon the preamble and conclusion of the officer, limited the scope of search to apartment 11.

Neither the trial court nor this court is to conduct a *de novo* determination upon the issue of probable cause.

We conclude that the trial court had a "substantial basis" for concluding that probable cause existed. In so concluding, we "accord great deference to the magistrate's determination of probable cause." Although not necessary to our conclusion in this case, we also find that the officers acted in good faith consistent with *Leon, supra.*

Each appellant's assignment of error I is overruled.

## II
## DID THE TRIAL COURT ERR IN GRANTING A SEPARATE TRIAL ONLY TO INDICTED DEFENDANT BENSON AND IN OVERRULING THE MOTION AS TO CALHOUN, MCGARRITY AND STRONG?

The assignments of error postulated by appellants Calhoun, McGarrity and Strong challenge the exercise of discretion by the trial court in the implementation of Ohio Criminal Rules of Procedure *and* the federal and state constitutional implications of the joint trial.

The rules provide for joint indictment where the defendants are alleged to have participated in the same acts or transactions. Crim. R. 9(B).

Where defendants are indicted jointly and the allegations are that they were involved in conspiracy, they generally should be tried together. *U.S. v. Erwin* (5th Cir. 1986), 793 F.2d 656.

Prejudicial joinder is properly challenged by pretrial motions for severance, as here.

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. . . Crim. R. 14.

The question of severance for trial is directed to the sound discretion of the trial court. *U.S. v. Davis* (6th Cir. 1983), 707 F. 2d 880.

The gist of appellants' argument is that McGarrity, Johnson, Calhoun and Barkley made statements to police, the use of which, during trial, would, and did, prejudice them by denying the right of cross-examination, consistent with the constitutional ruling in *Bruton v. U.S.* (1968), 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476, and progeny.

Appellants acknowledge that the several statements are not confessions within the ambit of *Bruton*. They argue that the use of the several statements by the State to demonstrate inconsistencies tends to show that some or all are lying and thereby creates the same constitutional deficit as encountered in *Bruton* resulting in the *Bruton* court overruling, *Paoli v. U.S.* (1957), 352 U.S. 232, 1 l.Ed. 2d 278, 77 S. Ct. 294.

The trial court gave a cautionary instruction, T. II, 177, 189, and no further instruction was requested. See dissent in *Bruton*.

In final argument, the State told the jury:

"But don't you find it incredible after you heard the statements of each various Defendant that at 10:00 on March 1, 1989, six people end up in an apartment that sells crack, what an incredible coincidence that all six of these, two from Detroit, Michigan -- one is a renter, obviously -- and the other three from different places in the City of Canton all end up at Rinaldo Barkley's apartment." Now, they have different versions of how they got there. T. III, 12, 13.

The challenged statement of Barkley is:

"A.Mr. Barkley told us that he had gotten up that morning, March 1, 1989, and had gone into the bathroom. When he came out of the bathroom, a short time later, about 9:00, three other individuals came to his apartment."

He identified them as Jesse [Strong], Lou Jean [Calhoun] and Terry [Benson]. He said that he knew it was about 9:00 because that is about what time the stores opened up. They were there for about twenty minutes, those three individuals; and two other individuals named Rip [Johnson] and Bell came to the apartment.

A short time later Rip asked if he could use the bathroom and went to the bathroom. A short time later is when the police raided the apartment.

Mr. Barkley told us that he had no idea of any type of cocaine dealing in the apartment and was not a witness to any type of cocaine transactions which occurred.

He also told us that he was -- that the gun that was found in the apartment was his and that he was an employee of Buckeye Protective Service.

Q. Did he explain to you the presence of the mirror on the dining room table?

A. Yes, he did. He told us that the mirror was on the table in the living room from the night before because a woman friend of his was there and was using it. T. II, 161-163.

McGarrity:

A. Mr. McGarrity told us that the evening before March 1, which would have been February 28, he came to Canton, Ohio, from Detroit, Michigan. He came for the purpose of visiting his girlfriend, Charlene Austin, who lived in Highland Park. She was not home. So he went to the apartment of an individual he knows only as Terry and stayed there for the evening. The next morning he and Terry and Lou Jean, the individual he described as Lou Jean, went to 800 Highland park, Apartment No. 11.

A short time after they were there, the police raided the apartment. He told us he did in the apartment because he was afraid and didn't know what to do.

Q. He didn't say anything as to whether or not he knew there was crack cocaine in the apartment?

A. He denied any knowledge of any kind of crack or cocaine dealing. T. II, 164-165.

Calhoun:

A. Mr. Calhoun told us that on the morning of March 1, 1989, he went to Ricky Barkley's apartment in Highland Park which would have been 800 Highland Park, Apartment No. 11.

When he arrived at the apartment, there were other people there; but he didn't know them. A short time later, the police raided the apartment. He also stated that he knew nothing about any type of cocaine or cocaine dealing which may have been going on in the apartment. T. II, 161.

Johnson:

A. He said he was from Michigan, that he came down to Canton from Michigan, and that a man named Meizer whom we know to be ---

A. A man named Meizer had brought him down here and he had only been here for a short period of time. Okay.

Q. Did he indicate to you how he got over to Apartment 11 at 800 Highland Park?

A. He stated that he had gone over there to visit and that he didn't spend the night there. He spent the night somewhere else, and he had gone over in the morning.

* * *

Q. But he does admit that he was in Apartment 11?

A. Yes, sir.

* * *

Q. In the interview, does it say that this Mr. Meizer brought him down or sent him money to bring him down?

A. I asked him how long he had been in Canton. He said I have been in Canton about a week. I asked him who did he come down here with. Said I came down by myself, Meizer. I said Meizer. He said Meizer, he brought me down here. T. II, 182-184.

We conclude that statements herein involved are not the kind of confession and incrimination statements considered in *Bruton*. The statements do not facially incriminate either the speaker or others. Their use during trial was appropriately controllable by instruction. *State v. Mortiz* (1980), 63 Ohio St. 2d 150, 150 N.E. 2d 1268 is inapposite.

The trial court neither abused its discretion nor transgressed appellants' rights by overruling the motion for severance and ordering these five defendants tried jointly.

Assignment of error II by Calhoun, McGarrity and Strong is overruled.

Further, the appellants have failed to affirmatively demonstrate that they would be prejudiced by being tried together. *State v. Torrez* (1981), 66 Ohio St. 2d 340, 421 N.E. 2d 1288.

III - Acquittal Motion
DID THE TRIAL COURT ERR IN OVERRULING CRIM. R. 29 (A) MOTIONS FOR ACQUITTAL AS TO JOHNSON, MCGARRITY AND STRONG ON THE GROUNDS THAT THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO PROVE THE ELEMENTS OF THE CRIME?

The gist of appellants' several arguments is that their mere presence in and about apartment 11 is insufficient to demonstrate conspiratorial criminal culpability.

We are impelled to review the record to determine whether there was sufficient evidence for the jury to find the defendant guilty beyond a reasonable doubt. *State v. Brown* (1988), 38 Ohio St. 3d 305, 528 N.E. 2d 523, *cert. denied* 1987, 103 L. Ed. 2d 239. Conspiracy may be proved by circumstantial evidence. *U.S. v. Migueles* (11th Cir. 1988), 826 F. 2d 117; *State v. Blackshear* (6/19/89), Stark App. No. CA-7638, unreported.

The evidence here is that apartment 11 at 800 Highland Park was infested with the presence of tangible evidence of drug presence, use and trafficking. Consider crack cocaine on the floor, Johnson in possession of $90.00 in cash with traces of cocaine on all the bills, a 6.35 caliber semi-automatic pistol, 17 grams of crack cocaine on the toilet, a single edge razor with traces of cocaine, a ceramic plate, a crack pipe with traces of cocaine, a plastic bag with crack located just inside the apartment door, a homemade crack pipe with traces of cocaine, a ceramic pipe with marijuana traces, a mirror with cocaine residue, a plastic bag with cocaine residue in the bathroom, five hand rolled marijuana cigarettes on the juvenile.

Add the behavior of each and all of the defendants and you have a crack house operation. Consider as Barkley, Strong, Calhoun and Benson were leaving the apartments, they were dropping things and brown paper with crack cocaine were found on the floor near Calhoun and Benson; the juvenile was found against the wall in the bedroom; Johnson and McGarrity were hiding in a closet;

pedestrian traffic in and out of the apartment; citizen information; a controlled drug purchase from the residence.

None of the defendants presented a reasonable hypothesis of innocence sufficient, as a matter of law, to deny to the jury the opportunity to consider the evidence, consistent with appropriate jury charge, and find, beyond a reasonable doubt, that each of the defendants was involved in a conspiracy in the trafficking of cocaine.

The argument of several defense counsel that the courts have become so consumed with the nationwide drug problem that, in their zeal to deal with it, they have "suspended the constitution" is simply not supported by the evidence in this case.

Appellant McGarrity's assignment of error IV and appellant Strong's assignment of error IV are overruled.

### IV

### IS THE JURY VERDICT OF GUILT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS TO MCGARRITY AND STRONG?

For the reasons stated with respect to the issue of Crim. R. 29(A) relief, we find that the jury verdict is supported by substantial, credible evidence from which the jury could reasonably conclude that all of the elements of the offense of conspiracy to trafficking had been proved beyond a reasonable doubt. *State v. Brown* (1988), 38 Ohio St. 3d 305, 528 N.E. 2d 523. (The assignments of error dealing with the manifest weight of the evidence are overruled.)

### V

### DID THE TRIAL COURT ERR IN DENYING DISCOVERY UPON A CLAIM OF FAVOR OF THE OHIO PUBLIC RECORDS ACT, R.C. 149.43, AS TO APPELLANT STRONG?

We have previously considered and rejected the argument that discovery rights are controlled by R.C. 149.43, Ohio Public Records Act, and not by Crim. R. 16. *State v. Trout* (6/12/89), Stark App. NO. CA-7673, unreported.

We find no abuse of discretion by the trial court in its discovery ruling.

Appellant Strong's assignment of error III is overruled. The numerous assignments of error are overruled, and the judgment of the Stark County common Pleas Court is affirmed.

*Judgment affirmed.*

PUTMAN, P. J. and
SMART, J. Concur.