OPINION
{¶ 1} Defendant-appellant Mark Hall appeals from his convictions and sentences in the Richland County Court of Common Pleas on one count of arson in violation of R.C. 2909.03 (A)(2), a felony of the fourth degree and one count of insurance fraud in violation of R.C. 2913.47 (B)(1), a felony of the third degree. Plaintiff-appellee is the State of Ohio.
 {¶ 2} The charges in this case arose from a fire at the appellant's residence on August 25, 2002. Brad Weaver, a volunteer with the Red Cross received a call from the appellant at 7:56 a.m. on August 25, 2002 requesting assistance because of a house fire. When he attempted to verify the fire with the police department, Mr. Weaver was told that it had not yet been reported. Julie Leggett, the Shelby police dispatcher, testified that she received a call from the appellant at 7:58 a.m. on August 25, 2002 on the direct line and that the appellant had asked for the number of the fire department. After further questioning appellant stated that he needed to report a fire at his residence. Ms. Leggett determined that appellant was calling from a residence at 42 Simeon in Shelby, Ohio. Ms. Leggett further testified that the Red Cross was the first to contact her about the fire and, further, that the appellant is the only person who ever called to ask for the number of the fire department to report a fire.
 {¶ 3} When the police arrived on the scene all the doors and windows to the residence were locked. Officer Magers, of the Shelby Police Department testified that the dispatcher advised appellant that he needed to come to the scene to let the firemen in the house, but appellant never arrived. After the fire department forced their way into the residence, firefighter Sam Sauder went into the kitchen area and discovered something smoldering in the area of the stove. He also found that the right rear control knob of the stove was set to the "on" position. Officer Dorsey testified that the source of the fire appeared to be the stove. Officer Dorsey noticed that the right rear burner was on "high" and there was a skillet on the burner with a stack of newspapers smoldering underneath.
 {¶ 4} After viewing the scene of the fire, Officer Magers and Officer Dorsey went to the residence at 42 Simeon Shelby, Ohio where the appellant had called to report the fire. Officer Dorsey testified that after receiving permission to search, they found Lynn Warrington, appellant's girlfriend, lying on the sofa underneath a blanket. Appellant was found hiding in a small closet in the residence. Officer Dorsey testified that when the appellant was taken into custody, he told Lynn Warrington not to say anything. Officer Dorsey further testified that when appellant was searched prior to being booked into the jail, he found a homeowner's insurance police in the right rear pocket of the appellant's jean shorts. While at this residence Officer Magers testified that he noticed a vehicle belonging to the appellant parked in the front of the residence. The vehicle was missing its front passenger tire. Officer Magers stated that he noticed gouge marks in the pavement where the vehicle was parked. While transporting Lynn Warrington back to the residence where the fire occurred, he was able to follow the route they had taken from the Taft Street residence to the residence on Simeon by the gouge marks on the road. Officer Magers testified that there are two gas stations and approximately 203 houses along the route the appellant traveled yet appellant did not attempt to report the fire until he arrived at 42 Simeon.
 {¶ 5} Randy Washburn, a fire investigator with the Shelby Fire Department, testified that when he arrived at the residence on October 25, 2002, the ceiling fan in the living room was operating. A floor fan and an air conditioning unit in the bedroom were also running. Mr. Washburn testified that from his investigation of the fire scene it did not appear to be an accident because there was a skillet on the right rear burner with a paper product underneath and the right rear control knob was in the "high" position. Captain Roub, of the Shelby Police Department, testified that when he went to the scene on the morning of August 25, 2002, he also observed the fans and the air conditioner running. Captain Roub testified that he lifted the pan that he had found on the right rear burner of the stove and found wads of paper stuck to the bottom as well as on the stove around the burner.
 {¶ 6} Evidence was also introduced at trial that appellant had taken out a fire insurance police with State Farm Insurance on the home and its contents sixteen days prior to the fire.
 {¶ 7} State Farm Insurance hired an outside company, S.E.A. Ltd., to conduct an investigation into the cause of the fire. Michael Linscott, a fire investigator with S.E.A., testified that he found fire damage in the kitchen indicating that the fire originated in the area of the electric range. In examining the range, Mr. Linscott stated that he found it abnormal that there were charred papers on the right rear burner under a skillet. In lifting the skillet he found paper stuck to the bottom and ashes just to the side of the burner which clearly indicated that the papers had been between the burner and the pan. Mr. Linscott stated that although there was charred food inside the skillet that was not the cause of the fire because there was no fire damage to the control panel of the range as would be the case if someone was careless while cooking. Mr. Linscott testified that based upon his analysis of the fire pattern, the condition of the control panel, and the paper on the burner he determined that the papers had been ignited by the burner being turned on.
 {¶ 8} Thomas Whitby, an electrical project engineer with S.E.A., examined a cord found on the stove. Mr. Whitby testified that the damage to the cord was caused by arcing and that the cord was not the cause of the fire.
 {¶ 9} At trial the appellant argued the fire was accidentally set by Lynn Warrington when she lit a cigarette off the burner that morning and forgot to turn it off. However, at trial evidence was introduced that indicated Ms. Warrington first told the claims representative from State Farm that she was sure she had turned the stove off after she lit her cigarette. Conversely, in court she testified she forgot to turn off the stove after she lit her cigarette and that her statement to the claims representative was false.
 {¶ 10} During the ensuing investigation into the cause of the fire, evidence was uncovered that appellant was having financial difficulties. Bart Hamilton, Chief Deputy Treasurer, with the Richland County Treasurer's Office, testified that appellant was delinquent in his real estate taxes. Captain Roub of the Shelby Police Department discovered during his investigation that appellant had several judgments against him. Finally, the appellant admitted in his August 30, 2002 statement to the claims representative for State Farm Insurance that he owed approximately $3,000 in fines.
 {¶ 11} The appellant's own statement and the statements of Lynn Warrington placed him as the last person in the residence prior to the fire. On August 30, 2002, appellant gave a recorded statement to Rob Raker, a claims representative with the Special Investigation Unit of State Farm Insurance. During that statement, the appellant said that he and Lynn had returned to the residence between 5:00 and 6:00 a.m. on August 25, 2002 after a night of drinking. Appellant stated that they both went back into the house for a short time to get some money and then left again. The appellant told Mr. Raker that on the way to buy more alcohol, the car got a flat tire so he drove to his Uncle Ray's house on Simeon. Appellant indicated that he could not find a jack so he walked back to his house on Taft Street to find a jack. Lynn Warrington also testified that after they arrived at the uncle's house, the appellant walked back to the residence to get a jack.
 {¶ 12} The case was tried to a jury. At the end of the trial, on the motion of appellant to dismiss counts two and three, counts two and three were consolidated into one count of insurance fraud. Prior to the start of closing arguments, the appellant raised a pro se motion for a continuance to obtain new counsel which the trial court overruled.
 {¶ 13} The jury found the appellant guilty of arson with the value of the physical harm being in excess of $500 and guilty of the crime of insurance fraud with the amount of the claim that was false or deceptive being more than $5,000 but less than $100,000. Appellant was sentenced to 17 months in prison on each count with the sentences to run concurrent.
 {¶ 14} Appellant timely appealed and submits the following assignments of error for our consideration:
 {¶ 15} "I. THE TRIAL COURT COMMITTED ERROR BY OVERRULING THE DEFENDANT-APPELLANT'S MOTION FOR ACQUITTAL UNDER RULE 29 (A) OF THE OHIO RULES OF CRIMINAL PROCEDURE, AND THEREBY VIOLATED THE DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH
AMENDMENTS OF THE UNITED STATES CONSTITUTION.
 {¶ 16} "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIIVED THE DEFENDANT-APPELLANT HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH
AMENDMENTS OF THE UNITED STATES CONSTITUTIION IN DENYING THE DEFENDANT-APPELLANT THE RIGHT TO CHANGE COUNSEL.
 {¶ 17} "III. THE TRIAL COURT COMMITTED PLAIN AND PREJUDICIAL ERROR BY PERMITTING INTO EVIDENCE TESTIMONY CONCERNING THE FILING OF A PREVIOUS FIRE INSURANCE CLAIM BY THE DEFENDANT-APPELLANT, AND FURTHER, TESTIMONY CONCERNING CERTAIN BILLS AND OBLIGATIONS OWED BY THE DEFENDANT-APPELLANT TO OTHER INDIVIDUALS.
 {¶ 18} "IV. THE COURT ERRED IN PERMITTING EXPERT TESTIMONY TO BE RECEIVED ON BEHALF OF THE STATE, WHICH EXPERT TESTIMONY RELIED ON THE OPINIONS OF OTHER EXPERTS, IN VIOLATION OF EVIDENCE RULES 701 THROUGH 705.
 {¶ 19} "V. DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL PROVIDED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION, AS WELL AS THE DUE PROCESS PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND IN ARTICLE 1 SECTION 16 OF THE OHIO CONSTITUTION."
 I. {¶ 20} In his First Assignment of Error appellant claims the trial court erred in failing to grant his Crim.R. 29 motion to acquit on the charge of arson. We disagree.
 {¶ 21} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:
 {¶ 22} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 23} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, syllabus:
 {¶ 24} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 25} Appellant was convicted of arson in violation of R.C. 2909.03
which states in pertinent part as follows:
 {¶ 26} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:
 {¶ 27} "(1) Cause, or create a substantial risk of, physical harm to any property of another without the other person's consent;
 {¶ 28} "(2) Cause, or create a substantial risk of, physical harm to any property of the offender or another, with purpose to defraud;
 {¶ 29} "* * *
 {¶ 30} "(B) (1) Whoever violates this section is guilty of arson".
 {¶ 31} Appellant contends that the evidence fails to prove any specific act on his part which caused the fire. Often, in arson cases, there is no eyewitness to the arson. Courts in this state have consistently found that circumstantial evidence can be sufficient to sustain an arson conviction. State v. Zayed (Aug. 7, 1997), Cuyahoga App. No. 71039; State v. Wills (June 5, 1997), Cuyahoga App. No. 70988;State v. Weber (Dec. 23, 1997), Franklin App. No. 97APA03-323; State v.Alba (June 2, 1995), Sandusky App. No. S-94-018; State v. Wright (Dec. 30, 1994), Crawford App. No. 3-92-24. "Of necessity, proof of arson must often rely heavily on circumstantial evidence because of the nature of the crime. But, as in all crimes, circumstantial evidence may establish any given element of the offense. Motive and opportunity are facts which can weigh heavily in establishing arson." State v. Hoak (Aug. 9, 1995), Lorain App. No. 94CA005917, quoting State v. Shaver (Dec. 20, 1989), Lorain App. No. 89CA0004505 at 7. Thus, in the present case "[t]he state was not required to introduce into evidence the testimony of someone who actually witnessed [the defendant] * * * set the fire." State v. Hoak,
supra. Rather, "[t]he element of knowledge required for a finding of aggravated arson can be established by circumstantial evidence." Id.
 {¶ 32} As for the evidence pertaining to whether or not appellant started the fire, admittedly the evidence is circumstantial in nature. We note "circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." State v. Richey, 64 Ohio St.3d 353, 363,595 N.E.2d 915, 1992-Ohio-44. Under Ohio law, circumstantial evidence and direct evidence inherently possess the same probative value. State v.Jenks (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492, 502-503. Thus, whether considering circumstantial or testimonial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." Hollandv. United States (1954), 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150,167. In both instances, "the jury must use its experience with people and events in weighing the probabilities." Id.
 {¶ 33} In the case at bar, the State presented evidence of appellant's motive to set the fire. Appellant purchased a homeowner's insurance policy on the house and its personal contents sixteen (16) days before the fire. (T. at 188-190). Appellant had the policy in his pocket at the time of his arrest. (Id. at 388-89). Appellant was in arrears on his property taxes. Further he had several judgments against him. (Id. at 239-40; 374). Appellant admitted to owing approximately $3,000.00 in fines. (Id. at 268)
 {¶ 34} Appellant called the Red Cross inquiring about assistance for a house fire, prior to calling the police to report the fire. The volunteer who had taken the call from the appellant testified that when he attempted to verify the fire with the police department he was informed that it had not yet been reported. (Id. at 117-18). When police officers arrived at the place from where appellant had telephoned to report the fire, appellant was found hiding in a small closet. (Id. at 382-83). As he was taken into custody appellant told his girlfriend not to say anything. (Id.).
 {¶ 35} Expert testimony presented at trial established the fire had been cause by placing paper underneath a skillet on the right rear burner of the stove, with the control knob of the burner being set to the "high" position. (Id. at 133-34; 214-15; 365-66). Evidence was presented that appellant was the last person inside the residence before the fire. (Id. at 264; 349-50).
 {¶ 36} Upon review, we find sufficient evidence to overcome the motion to acquit and support the conviction, and no manifest miscarriage of justice.
 {¶ 37} Appellant's First Assignment of Error is overruled.
 II. {¶ 38} In his Second Assignment of Error, appellant contends that hisSixth Amendment right to counsel was violated. In particular, appellant contends that the trial court failed to specifically inquire into his complaints about the effectiveness of his trial counsel. Appellant contends that such inquiry was required under State v. Deal (1969),17 Ohio St.2d 17, 244 N.E.2d 742.
 {¶ 39} In State v. Deal, supra, the Supreme Court of Ohio held the following: "Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, by stating that such counsel failed to file seasonably a notice of alibi or to subpoena witnesses in support thereof even though requested to do so by accused, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record. The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable".
 {¶ 40} The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. Morris v. Slappy (1983), 461 U.S. 1, 13, 103 S.Ct. 1610, 1617,75 L.Ed.2d 610; State v. Blankenship (1995), 102 Ohio App.3d 534,657 N.E.2d 559; State v. Burroughs, 5th Dist. No. 04CAC03018,2004-Ohio-4769 at ¶ 11.
 {¶ 41} In the context of reviewing a claim by the defendant that the trial court abused its discretion by overruling the defendant's request to discharge court appointed counsel and to substitute new counsel for the defendant the courts have taken the approach that the defendant must show a complete breakdown in communication in order to warrant a reversal of the trial court's decision. In State v. Cowans (1999), 87 Ohio St.3d 68,1999-Ohio-250, 717 N.E.2d 298 the Court noted: "[e]ven if counsel had explored plea options based on a belief that Cowans might be guilty, counsel's belief in their client's guilt is not good cause for substitution. "`A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism.'" Brown v.United States (C.A.D.C. 1959), 264 F.2d 363, 369 (en banc), quoted inMcKee v. Harris (C.A.2, 1981), 649 F.2d 927, 932. "`If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.'" McKee, 649 F.2d at 932, quotingMcKee v. Harris (S.D.N.Y. 1980), 485 F.Supp. 866, 869." Id. at 73,717 N.E.2d at 304-305.
 {¶ 42} In a similar vein it has been held that hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. See State v.Henness (1997), 79 Ohio St.3d 53, 65-66, 679 N.E.2d 686. Furthermore, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." State v. Glasure (1999),132 Ohio App.3d 227, 239, 724 N.E.2d 1165; State v. Evans (2003),153 Ohio App.3d 226, 235-36, 2003-Ohio-3475 at ¶ 31, 792 N.E.2d 757,764; State v. Newland, 4th Dist. No. 02CA2666, 2003-Ohio-3230 at ¶ 11.
 {¶ 43} In the case at bar, appellant was originally assigned counsel. (See, Judgment Entry of Arraignment, filed Oct. 29, 2003). Appellant retained the attorney that he subsequently wished to discharge. (T. 418; see also, Entry of Appearance, filed Feb. 17, 2004). On the third day of trial, prior to the commencement of closing arguments, appellant expressed his dissatisfaction with his attorney. Essentially, appellant made three claims to the trial court concerning his dissatisfaction with counsel. First, appellant contended that counsel failed to introduce into evidence appellant's civil claim for breach of contract against the insurance company. (T. at 415-16). The trial court responded by informing appellant that evidence concerning whether the insurance company breached its contract with appellant would not be admissible in the criminal trial. (Id. at 416). The court explained that in the criminal trial the issue was whether appellant set the fire in an effort to defraud the insurance company. (Id.). Appellant next objected to counsel failing to introduce his girlfriend's statement to an investigator hired by the defense. (Id. at 416-17). The court explained that Ms. Warrington had testified under oath during the trial and had a full opportunity to testify to whatever she told the investigator. Finally, appellant was concerned that counsel failed to inquire about there being other vehicles in the driveway the night of the fire. (Id. at 415). The trial court noted that there had been a three day delay in the appellant's trial and that appellant was not able to find another attorney to take over his case. (Id. at 419). Counsel explained to the court that he had met with appellant the preceding day and "I felt very confident that I had things under control." (Id. at 421).
 {¶ 44} We find that the trial court conducted a sufficient inquiry on the record about complaints the appellant has raised regarding his retained counsel. We concur with the trial court that there were insufficient reasons to have retained counsel removed.
 {¶ 45} Appellant's Second Assignment of Error is denied.
 III. {¶ 46} In his Third Assignment of Error, appellants maintains that the trial court abused its discretion in allowing appellee to present evidence of a prior fire claim made by appellant and evidence indicating appellant's financial difficulties. We disagree.
 {¶ 47} Appellee argues that evidence of other fires was properly admitted under Evid.R. 404 (b). The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v.Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find the trial court abused its discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157. We must determine whether such discretion was abused in ruling that the probative value of such fires outweighed their potentially prejudicial effect. United States v. Czarnecki, 552 F.2d 698 (6th Cir.), cert. denied, 431 U.S. 939,97 S.Ct. 2652, 53 L.Ed.2d 257 (1977).
 {¶ 48} Evidence of other fires is admissible in an arson case. Hammannv. Hartford Accident and Indemnity Co., (6th Cir. 1980), 620 F.2d 588;Dabash v. Royal Indemnity Company (July 15, 1982), 8th Dist. No. 43967. In Hammann the court stated "* * * the trial court properly instructed the jury that the fires were to be considered as bearing only on Hammann's motive. See Terpstra v. Niagara Fire Insurance Co., 26 N.Y.2d 70,308 N.Y.S.2d 378, 256 N.E.2d 536 (1970). Lastly, Hartford asserted the defense of incendiarism which included evidence of Hammann's intent or knowledge of the occurrence. See, e.g., Trice v. Commercial UnionAssurance Company, 397 F.2d 889 (6th Cir. 1968), cert. denied,393 U.S. 1018, 89 S.Ct. 623, 21 L.Ed.2d 563 (1969)". Hammann at 588.
 {¶ 49} Further, evidence of appellant's financial condition was relevant and admissible to support the State's theory that appellant had a motive to start the fire. See, Riley v. State (2004), 278 Ga. 677, 687,604 S.E.2d 488, 498; State v. Enright (2000), 303 Mont. 457, 464,16 P.3d 366, 371; People v. Musitief (1990), Ill. App.3d 872, 877,559 N.E.2d 520, 524.
 {¶ 50} In the case at bar, the trial court properly gave the jury a limiting instruction that the evidence could only be used to show the familiarity of appellant with the fact that fire loss claims can be made under a policy and the procedure for making fire loss claims. (T. 252). The court found that because the charge was arson with the purpose to defraud the insurer, the financial status evidence and the evidence of a prior fire loss claim were admissible to show motive. A jury is presumed to follow instructions given it by the court. State v. Henderson (1988),39 Ohio St.3d 24, 528 N.E.2d 1237.
 {¶ 51} Accordingly, appellants' Third Assignment of Error is overruled.
 IV. {¶ 52} In his Fourth Assignment of Error, appellants maintain that the trial court erred in admitting the expert testimony of Michael Linscott regarding the cause and origin of the fire. We disagree.
 {¶ 53} Appellant does not contest Linscott's expert qualifications. Rather, appellant contends that his testimony was not admissible because Linscott based his opinion in part upon the opinion of a second expert witness, Thomas Whitby, an electrical engineer. Specifically, Linscott based his opinion that the fire was started by placing paper under the right rear burner of the stove, placing a skillet on top of the paper and turning the burner on "high" in part upon Whitby's opinion after his examination of the evidence that an electrical cord which was burned on the stove could be ruled out as the cause of the fire.
 {¶ 54} Rule 703 of the Ohio Rules of Evidence states: "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing". In interpreting this Rule of Evidence, the Supreme Court has written: "[i]t is important to note that Evid.R. 703 is written in the disjunctive. Opinions may be based on perceptions or facts or data admitted in evidence." (Emphasis sic.) State v. Solomon (1991),59 Ohio St.3d 124, 126, 570 N.E.2d 1118, 1120. As long as evidence admissible at trial is introduced and admitted through fact witnesses with personal knowledge, an expert witness without personal knowledge of the underlying event is permitted to testify to an opinion based on admitted facts. In other words, experts may opine based upon predicate facts otherwise admissible in evidence under Evid.R. 703.
 {¶ 55} Whitby testified at trial concerning his analysis of the power cord. (T. at 152-55). He further testified concerning the opinion that he had provided to Linscott. (Id. at 156-57). Accordingly, Linscott's testimony was based upon facts admitted into evidence at trial. Under these circumstances, the trial court did not abuse its discretion in permitting these expert opinions. Miller v. Bike Athletic Co. (1998),80 Ohio St.3d 607, 616-17, 687 N.E.2d 735, 743.
 {¶ 56} Appellant's Fourth Assignment of Error is overruled.
 V. {¶ 57} In his Fifth Assignment of Error, appellant argues he was denied effective assistance of counsel. We disagree.
 {¶ 58} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 59} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 60} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 61} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 62} Appellant argues that his trial counsel failed to object to the admission of evidence regarding a previous fire insurance claim, appellant's financial difficulties and the lack of admissibility of the opinion of the expert witnesses. We disagree.
 {¶ 63} Appellant's trial counsel did object to the admissibility of the previous fire insurance claim. (T. at 248-250). Accordingly, we find no prejudice to appellant as a result of trial counsel's actions in this regard.
 {¶ 64} Appellant next argues that his trial counsel was ineffective in failing to object to evidence concerning his financial condition at the time of the fire. In light of our disposition of appellant's Third Assignment of Error, we find no prejudice to appellant as a result of trial counsel's failure to challenge the evidence of appellant's financial condition at the time of the fire.
 {¶ 65} Appellant next argues that his trial counsel was ineffective in failing to object to the expert testimony of Michael Linscott. In light of our disposition of appellant's Fourth Assignment of Error, we find no prejudice to appellant as a result of trial counsel's failure to challenge the admissibility of the opinion of the expert witness.
 {¶ 66} In sum, appellant has not met his burden of showing prejudice as a result of counsel's deficiencies.
 {¶ 67} Accordingly, appellant's Fifth Assignment of Error is overruled.
 {¶ 68} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed. Costs to appellant.