[Cite as *State v. Huler*, 2019-Ohio-5121.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                          No. 108224

    v.                           :

GINA M. HULER,                          :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 12, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-627962-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Andrew T. Gatti, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Gina M. Huler ("Huler"), appeals her conviction for aggravated arson. For the reasons set forth below, we affirm.

{¶ 2} In May 2018, Huler was charged with one count of aggravated arson, in connection with a fire that occurred at the Parma, Ohio residence she shared with her boyfriend and two of their three children, as well as with their two dogs. In December 2018, the matter proceeded to a bench trial.

{¶ 3} At trial, through the testimony of 11 state witnesses and Huler, who testified in her own defense, it was established that Huler and her boyfriend, Grant Delewski ("Delewski"), rented the house where the fire occurred for approximately four years. Huler and Delewski had an unwritten month-to-month tenancy requiring them to pay $400 per month, plus the cost of the utilities.

{¶ 4} On April 13, 2018, the day of the fire, Delewski was at work, and the two sons were at work and school, respectively. Their landlord, Bernadette Kulikowski ("Kulikowski"), hired masons to tuck-point the chimney of the house, as well as the house next door, which had also been owned by Kulikowski. At approximately 1:00 p.m., after leaving the house twice and returning for the second time around 12:30 p.m., Huler came out of the house yelling and screaming that there was a fire inside and her dogs were trapped inside the house. Two neighbors assisted Huler by calling 911, and one of the masons rescued one of the dogs. The second dog was rescued after the fire department, police, and dog warden arrived on the scene.

{¶ 5} The fire department extinguished three distinct fires in the home; one on the landing between the first floor and the basement; one on a hanging mail and key holder; and one at the entrance to the kitchen. There was evidence to suggest

there would have been a fourth fire, but it failed to erupt. The fire caused approximately $4,200 worth of damage.

{¶ 6} Huler's neighbor Delores Whitescarver ("Whitescarver") testified at the trial. Whitescarver testified that on the day of the fire, she happened to be looking periodically out her window, which faces Huler's house. Whitescarver stated she could see the masons at work on the roof next door and later working on Huler's house. Whitescarver testified that when Huler returned home around 12:30 p.m., she appeared to speak briefly with the older of the two masons, and then went inside. Whitescarver stated that about 30 minutes later, she observed Huler running down the driveway and across the street screaming "fire."

{¶ 7} Neighbors Dale Mitchell ("Mitchell") and Lauren Anselmo ("Anselmo") live across the street from Huler. Mitchell testified that he helped rescue one of the dogs when Huler ran across the street screaming "fire" and indicated that her dogs were still inside the house. Mitchell testified he had to enter the house twice before the dog would come out of the house. Anselmo testified that she had observed Huler walking her dogs the morning of the fire. Anselmo stated that sometime between 9:30 a.m. and 10:00 a.m., Huler got in her car and left. Anselmo testified that sometime between 12:30 p.m. and 1:00 p.m., she heard pounding on the side door and then heard Huler screaming and asking for help to save her dogs. On cross-examination, Anselmo testified that she had noticed that morning that Huler's dining room window, which was normally open, was closed.

Anselmo testified it was a beautiful day and the only window Huler had open was the kitchen window.

{¶ 8} Delewski, who works as a contractor, testified he was in downtown Cleveland, when a neighbor notified him of the fire. Delewski headed home, but the fire was extinguished by the time he arrived. Later that evening, in an interview with fire inspectors, Delewski expressed the belief that sparks were flying while the masons worked on the chimney, which traveled down the chimney through the attic floor and started the fires.

{¶ 9} One of the masons, Michael Doracak ("Doracak"), testified that he retired from the Strongsville Fire Department after 33 years and has been involved in general contracting for 40 years. Doracak testified that Kulikowski hired him to tuck-point around the chimneys of the two houses, one of which was Huler's. Doracak explained that tuck-pointing involves cleaning out mortar joints with a grinder and then remortaring the joints. Doracak further explained that the process produces a lot of dust and does not produce any sparks. Doracak testified that in his 33 years as a firefighter, he had never responded to a fire caused by the grinding of mortar joints.

{¶ 10} Doracak worked on Huler's house earlier that day and was on the roof of the second house, when he observed Huler running across the street yelling that the house was on fire. Doracak came down off of the roof to provide assistance. Doracak testified that smoke was billowing out the front door, so he used a crowbar to open the side door, and he was able to rescue one of the dogs. Doracak testified

that by the time the fire department arrived, the fire was out and the house just needed ventilation.

{¶ 11} Raymond Alessandro ("Alessandro"), a concrete contractor, testified that he worked with Doracak the day of the fire at Huler's house. Alessandro testified that he witnessed the fire, came down off of the roof, and provided assistance opening the side door so they could rescue the dogs. Alessandro also explained that grinding mortar joints does not produce sparks. Alessandro testified that there were no sparks when they tuck-pointed the chimney of Huler's house.

{¶ 12} Mollie Jordan ("Jordan"), of the State Fire Marshal's Forensic Lab, testified that she analyzes evidence for possible ignitable liquids, possible latent fingerprints, and also swabs for DNA. Jordan testified that she tested the debris from the fire. Specifically, Item Number 1, debris from the kitchen and hallway floor, tested negative for ignitable liquids; Item Number 2, debris from the kitchen table, tested negative for ignitable liquids; Item Number 3, debris from the trash can on the stairs, tested positive for acetone; Item Number 4, debris from the attic, tested positive for gasoline; and Item Number 5, plastic bottle from the attic, tested positive for gasoline.

{¶ 13} Jordan testified that Item Number 5, the plastic bottle, was processed for latent prints, but no prints of value were found. In addition, the lid of the bottle was swabbed for DNA and the swab was sent to BCI for testing. Jordan testified the report from BCI indicated there was no DNA suitable for testing. Jordan explained that if someone touched an item for only a second or with freshly washed hands,

they would leave no sweat residue and, as a result, the item would not be suitable for DNA testing.

{¶ 14} Jeff Koehn ("Koehn"), a fire investigator for the Ohio Division of State Fire Marshal, whom the defense stipulated was an expert witness, testified that the Parma Fire Department asked him to investigate the fire. Koehn explained the four classification causes for fires as (1) accidental, such as a fire caused by an electrical short, failure of equipment, appliance, or tool; (2) natural, such as wind causing a fire, lightening, flood, or any natural occurring act; (3) incendiary, which is an intentional human act; and (4) undetermined, where the heat source, ignition source, or fuel is unknown or unavailable to form a hypothesis to classify it as one of the other three causes of fires.

{¶ 15} Koehn testified that when he arrived on the scene, he documented the exterior and the interior of the house with his camera, examining the least damaged areas and then most damaged areas. Koehn found fire debris on the floor of the kitchen, but found no damage to the refrigerator, stove, or appliances on the countertop. Koehn testified he inspected those appliances for failure and determined that none had caused the fire.

{¶ 16} Koehn further testified that he examined the debris on the kitchen table, which included a wicker basket and its contents, along with a mail and key holder. Based on the fire pattern on the wall, Koehn determined that the fire on the kitchen floor was separate from the fire on the kitchen table. Koehn also examined

a cell phone charger and found there was no arcing to the wiring, which indicated that the wire was not involved in the ignition of the fire.

{¶ 17} Koehn testified that when he interviewed Huler, she initially indicated that there was $745 in cash for the rent and utilities in or under the wicker basket. Koehn testified that they found paper products from the wicker basket that were recognizable, but found no evidence of any currency in the kitchen. Koehn explained that the cloth contained in paper currency, whether stacked $100's, $20's, or $10's would not be completely consumed in the type of fire that occurred.

{¶ 18} Koehn testified that he examined the debris on the landing between the first floor and the basement. The debris included the remnants of a plastic trash can. The results of the analysis on the trash can indicated a positive test for acetone. Koehn testified that upon examining the area at the top of the stairs and the attic, they found a piece of charred cardboard tube from a paper towel roll, carpet remnant, and a water bottle located four feet from the opening of the attic. Koehn testified that the charred cardboard tube, the carpet remnant, and the water bottle tested positive for gasoline. Koehn explained that the gasoline from these items was fresh, not aged or weathered gasoline.

{¶ 19} Koehn testified that the fires in the separate locations in the house did not communicate with each other. Koehn explained the first fire, on the countertop, was fuel limited, so it burned out before spreading up the wall or beyond the wall corner of table top. The second fire, in the kitchen, Koehn explained, spread up the wall and about three feet across the ceiling. Koehn testified that these two fires did

not communicate across the ceiling as one would expect in a house fire when something burns. Koehn explained the third fire, on the landing, did not communicate beyond its limited area of origin.

{¶ 20} Koehn testified that after conducting his examination and investigation, he determined to a reasonable degree of scientific certainty that the cause of the fires were incendiary. Koehn further determined that Huler lit the fires.

{¶ 21} After defense counsel's oral motion for acquittal was denied, Huler testified in her own defense. Huler testified that she previously worked as a dialysis technician, but had been out of work for the past three years because of multiple medical conditions. Huler explained that she experiences severe pain as a result of her medical conditions.

{¶ 22} Huler testified that on the day in question, after Delewski and their sons had left for the day, she took her dogs out, then drove to the Shell gas station to get a cup of coffee, and then returned home. She explained that she left the house again shortly before noon to go to Walmart to purchase some household items and also stopped at a BP gas station. Huler testified that as she walked through the front door, she discovered the fire. Huler explained that she did not immediately see the fire, but smelled smoke, and upon walking through the living room, she heard something fall. She further testified that she called for her dogs, but neither one came running, so she ran outside while calling 911.

{¶ 23} Huler testified that they were current with the rent and that she was expecting Kulikowski to collect the rent the day of the fire. Huler testified that the

money for the rent was in an envelope in the basket or in the mail holder. Huler testified that they had no rental insurance.

{¶ 24} The trial court found Huler guilty as charged. The trial court imposed a two-year suspended sentence and placed her on probation for two years. The trial court ordered restitution in the amount of $4,264.47, and notified Huler that she will have to register her address as an arson offender for a period of ten years.

{¶ 25} Huler now appeals, assigning the following two errors for review:

<u>Assignment of Error One</u>

There was insufficient evidence produced at trial to support a finding of guilt.

<u>Assignment of Error Two</u>

The trial court erred by finding [Huler] guilty against the manifest weight of the evidence.

{¶ 26} In the first assignment of error, Huler argues the state failed to produce sufficient evidence to support a finding of guilt.

{¶ 27} Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Williams*, 8th Dist. Cuyahoga No. 106563, 2018-Ohio-4612, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id.* The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 28} The trial court found Huler guilty of aggravated arson in violation of R.C. 2909.02(A)(2), which provides:

> (A) No person, by means of fire or explosion, shall knowingly do any of the following:
>
> * * *
>
> (2) Cause physical harm to any occupied structure[.]

{¶ 29} In the instant case, it is undisputed that the house was an occupied structure, there is no question that the fire occurred, and it was uncontroverted that the fire resulted in approximately $4,200 worth of damage. The remaining element is whether Huler was responsible for the fire.

{¶ 30} At trial, Koehn, whom the defense stipulated was an expert fire investigator, laid out the four classifications for causes of a fire as accidental, natural, incendiary, and undetermined. Koehn meticulously eliminated any possibility that the fire was accidental. There was no evidence of an electrical short and no evidence of the failure of an equipment or tool. The possibility that the fire resulted from natural causes, such as lightning strike, flood, or high winds, was also eliminated.

{¶ 31} Koehn eliminated the undetermined classification by presenting evidence that Huler intentionally set the fire. First, it is uncontested that Huler was the only person in the house when the fire started. Huler's neighbor, Whitescarver, who lived directly across the street, testified that Huler returned home at

approximately 12:30 p.m. It was established that at approximately 1:00 p.m., Huler was observed running out of the house yelling "fire" and screaming for help to save her dogs. Therefore, not only was Huler the only person in the house at the time of the fire, but she had been in the house approximately 30 minutes before the fire occurred.

{¶ 32} Koehn also determined that three separate fires were set in three separate locations in the house and a fourth was attempted, but failed to erupt. In support of his determination, Koehn discussed in detail three distinct fire patterns, which had no connection to each other and did not spread across the ceiling as a normal house fire would spread. A determination that there were three separate and distinct fires, with no connecting patterns, serves to eliminate the notion that sparks from the masonry work completed earlier that day could have gone down the chimney, into the house, and started the fire. Doracak, the general contractor with 40 years of experience, who also retired from the fire department after 33 years, testified that grinding mortar does not produce sparks.

{¶ 33} In addition, the forensic lab report indicated that three of the five samples tested positive for ignitable liquids. The debris from the trash can on the stairs tested positive for acetone; debris from the attic tested positive for gasoline, and the plastic water bottle tested positive for gasoline. The forensic lab report also indicated the gasoline was fresh, not weathered or aged gasoline.

{¶ 34} Further, although the fire investigation determined that the cause of the fire was classified as incendiary and was intentionally set by Huler, we could

arrive at the same conclusion using only circumstantial evidence. "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus. "'A conviction [of arson] can be sustained based on circumstantial evidence alone.'" *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 37 (8th Dist.), quoting *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147, 154-155, 529 N.E.2d 1236 (1988). "As is often in [] arson cases, there is no eyewitnesses to the arson; proof of arson, out of necessity, must often rely on circumstantial evidence." *Id.*, citing *State v. Hall*, 5th Dist. Richland No. 2004-CA-0093, 2005-Ohio-4403, ¶ 31.

{¶ 35} Thus, "'Ohio's courts have consistently found that circumstantial evidence can be sufficient to sustain an arson conviction.'" *Id.* at ¶ 37, quoting *State v. Simpson*, 7th Dist. Columbiana No. 01-CO-29, 2002-Ohio-5374, ¶ 47, citing *State v. Webb*, 8th Dist. Cuyahoga No. 72588, 1998 Ohio App. LEXIS 2851 (June 25, 1998). *See also*, *e.g.*, *State v. McDowall*, 10th Dist. Franklin Nos. 09AP-443 and 09AP-444, 2009-Ohio-6902, ¶ 12 (while the arson case turns on circumstantial evidence, the defendant's conviction can be sustained based on circumstantial evidence alone); *Simpson*.

{¶ 36} Based on the foregoing, the state presented sufficient evidence to support Huler's conviction for aggravated arson.

{¶ 37} Accordingly, the first assignment of error is overruled.

{¶ 38} In the second assignment of error, Huler argues her conviction is against the manifest weight of the evidence because the state established every element except that she caused the fire. This court disagrees.

{¶ 39} Analyzing a claim under the manifest weight standard requires us to "'review[] the entire record, weigh[] [all of] the evidence and all [of the] reasonable inferences, consider[] the credibility of the witnesses, and determine[] whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed[.]'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 40} As we discussed at length in the first assignment of error, the state presented evidence that eliminated three of the four classifications for causes of fires. The fire was not accidental, was not naturally occurring, and was not undetermined. The state methodically presented evidence of the nature of the three separate fires and the undisputed evidence that Huler was the only person in the house at the time of the fire.

{¶ 41} Consequently, after reviewing the record, weighing the evidence and all the reasonable inferences, and considering the credibility of the witnesses, we cannot conclude Huler's aggravated arson conviction against the manifest weight of the evidence.

{¶ 42} Accordingly, the second assignment of error is overruled.

{¶ 43} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER J., and
MICHELLE J. SHEEHAN, J., CONCUR