[Cite as *State v. Stacy*, 2025-Ohio-4491.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2024 CA 00204 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No.2024CR1806 |
| MICHAEL DEAN STACY | |
| Defendant – Appellant | Judgment:   Affirmed |
| | Date of Judgment Entry: September 25, 2025 |

**BEFORE:** CRAIG R. BALDWIN P.J.; ANDREW J. KING, J.; KEVIN W. POPHAM, J., Appellate Judges

**APPEARANCES:** KYLE STONE, for Plaintiff-Appellee; BY: LISA A. NEMES, for Plaintiff-Appellee, BERNARD L. HUNT, for Defendant-Appellant

OPINION

*Popham, J.*

{¶1}   Defendant-Appellant Michael Dean Stacy ("Stacy") appeals his conviction and sentence after a jury trial in the Stark County Court of Common Pleas.  For the reasons that follow we affirm.

*Facts and Procedural History*

{¶2}   On September 19, 2024, the Stark County Grand Jury indicted Stacy on one count of aggravated arson in violation of R.C. 2909.02(A)(1)/(B)(2), a first-degree felony.  A jury trial began on October 29, 2024.

**Stacy's Living Arrangements**

{¶3} For nearly two years before the incident Stacy lived in a small trailer/camper parked in the backyard of Jeremy Moore and Renee Bandy's home, where they lived with their six children. *Trial Transcript ("T.")* at 128, 159. Jeremy and Stacy had known each other for over thirty years. *Id.* at 128. Jeremy testified that he permitted Stacy to live [in the camper] because "he didn't really have nowhere else to go." *Id.* at 129. Jeremy also had six vehicles parked in the yard, approximately twenty feet from his residence and near Stacy's trailer. *Id.*

**Discovery of Smoke and Fire**

{¶4} The events giving rise to this case occurred on August 19, 2024. That afternoon, Jeremy observed smoke in his backyard. *T.* at 130. Initially, Jeremy assumed the smoke was from a fire pit. However, upon closer inspection, he realized the smoke was coming from Stacy's trailer. *Id.* at 130.

**Extinguishing the Flames**

{¶5} Concerned for Stacy's safety, Jeremy opened the trailer door to check if Stacy was inside. Finding the trailer empty, Jeremy noticed flames on the stove. *T.* at 130. Stacy was later discovered inside an abandoned house located behind Jeremy's residence and near Stacy's trailer. *Id.* at 134. Jeremy and several of his children immediately began carrying buckets and bowls of water to extinguish the fire. After approximately three attempts, they were successful in putting out the fire. *Id.* at 131, 160.

{¶6} After the fire was out, Jeremy removed the cover from the trailer's two propane tanks and turned them off as a precaution. Renee, however, recalled Jeremy telling her the tanks were already off at the time of the fire. *T.* at 151, 174-175. At the

time of the fire, a car battery that normally supplied power to the lights and refrigerator inside the trailer was not connected.  *Id.* at 151, 254-255.

**Stacy Located in the Abandoned House**

{¶7}    Despite the fire, neither Jeremy nor Renee contacted the fire department.  *T.* at 138, 142, 159.

{¶8}    While Jeremy was extinguishing the fire, Renee heard noises coming from the nearby abandoned house.  *T.* at 163.  After confirming that Stacy was not in the trailer, she approached the house and coaxed Stacy outside by promising to get him help.  *Id.* at 134, 163-164.  Initially, Stacy appeared willing to go to the hospital.  However, a physical altercation soon erupted between Stacy, Jeremy, and Jeremy's nineteen-year-old son.  *T.* at 142-143, 164, 178, 180-182.  During the fight, Renee called 9-1-1 seeking medical assistance for Stacy.  *Id.* at 164-165, 178-179, 182.  After the struggle, Stacy retreated to his trailer.  *Id.* at 143, 180.

**Police Response and Scene Securing**

{¶9}    Police officers were dispatched to the residence for a welfare check.  *T.* at 190.  Sergeant Zachary Taylor of the Canton Police Department testified that while officers were en route, dispatch advised them that Stacy had an active warrant. *Id.* at 190-191.  When officers arrived, they encountered a possible barricade situation because Stacy refused to come out of the trailer. *Id.* at 190.  By the time Sergeant Taylor arrived on the scene, six officers and a road sergeant were already present.  *Id.* at 191.  Officers engaged in dialogue with Stacy, which was recorded on body cameras and played for the jury as State's Exhibit 2.  *Id.* at 192-194.  Stacy ultimately surrendered without incident.  *Id.* at 206.

{¶10} Once Stacy exited, Sergeant Taylor secured the scene and confirmed that no one else was inside the trailer. *T.* at 195, 197. He detected a strong smoke odor and requested the fire department be dispatched to the scene. *Id.* at 196-197, 216. Although no active flames were present, Taylor smelt burnt smoke in the kitchen and living areas and detected a possible chemical odor in the bathroom. *Id.* at 205-206.

**The Investigation**

{¶11} Fire investigator Richard Bibighaus of the Canton Fire Department conducted the investigation. He testified that Stacy's trailer, a 24-foot camper, was parked between two houses—Jeremy and Renee's home and a vacant house approximately twenty-seven feet away on the opposite side. Several vehicles were also in close proximity. *T.* at 237-238.

{¶12} Bibighaus observed broken windows on the camper and an outside vent above the stove coated in soot and sagging, suggesting heat damage. *T.* at 239-240; State's Exhibit 3F. Bibighaus testified that inside camper he noted melted and deformed items near the stove, including a plastic fan, window blind, and vent fan blades that appeared to have partially liquefied. *T.* at 244-245; State's Exhibits 4B/4C. The wall near the stove was scorched, and melted plastic bottles were found on and around the stove. *Id.* at 247; State's Exhibit 4E. However, Bibighaus testified that other nearby items—including a plastic cup, sugar container, cardboard box, and a charging cord—showed no signs of heat or fire damage. *Id.* at 270-272, 279-280.

{¶13} Bibighaus testified that all stove knobs were in the "off" position, and no food was present on the stove, leading Bibighaus to conclude the fire was not a cooking accident. *T.* at 248-249, 253. Bibighaus testified that the trailer had no electrical power

at the time, and a disconnected battery could not have supplied electricity, ruling out an electrical malfunction. *Id.* at 254-255; State's Exhibit 5A.

{¶14} Three lighters were found near the stove—one in the sink, one behind it, and one on the floor. Bibighaus identified these as the only plausible ignition sources. *T.* at 249-250, 260; State's Exhibits 4F/4G. Bibighaus testified that witnesses told him that Stacy was the only person to enter the trailer that day. *Id.* at 260-261.

{¶15} Finally, Bibighaus explained that the fire posed a significant risk to the surrounding property. Had it spread, it could have ignited nearby vehicles, the two propane tanks, and adjacent homes. *T.* at 258-259. He noted that the empty propane tanks increased the danger because empty tanks heat up faster and can explode. *Id.* at 257-258. Bibighaus concluded that the fire was intentionally set and, if not quickly extinguished, could have caused substantial harm. *Id.* at 259.

{¶16} The defense rested without presenting witnesses.

**The Verdict and Sentence**

{¶17} The jury found Stacy guilty of aggravated arson. The trial court sentenced Stacy to an indefinite term of four years with the potential maximum term of six years in prison.

*Assignments of Error*

{¶18} Stacy raises two assignments of error for our consideration.

{¶19} "I. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR ACQUITTAL BECAUSE APPELLANT'S CONVICTION OF AGGRAVATED ARSON WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE."

{¶20} "II. APPELLANT'S CONVICTION OF AGGRAVATED ARSON WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶21} In his first assignment of error, Stacy contends that the trial court erred in not granting his Crim. R. 29 motion for acquittal at the conclusion of the state's case. We disagree.

{¶22} When reviewing a trial court's denial of a Crim.R. 29 motion for acquittal, an appellate court considers whether the evidence presented at trial was legally sufficient to sustain the conviction. *State v. Williams*, 74 Ohio St.3d 569, 576 (1996); *State v. Carter*, 72 Ohio St.3d 545, 553 (1995); *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), *superseded by constitutional amendment on other grounds as stated in State v. Smith,* 80 Ohio St.3d 89, 102 n.4 (1997); *see also State v. Robertson*, 2022-Ohio-905, ¶ 15 (5th Dist.); *State v. Pearce*, 2017-Ohio-8386, ¶ 11 (5th Dist.).

### Standard of Appellate Review – Sufficiency of the Evidence

{¶23} Sufficiency of the evidence is a question of law that we review de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan*, 2023-Ohio-3800, ¶ 13. The Sixth Amendment guarantees an accused the right to trial by an impartial jury, and the Due Process Clause requires the State to prove every element of the charged offense beyond a reasonable doubt. *United States v. Gaudin*, 515 U.S. 506, 509-510 (1995); *Hurst v. Florida*, 577 U.S. 92 (2016). Sufficiency of the evidence review entails examining the elements of the offense and the evidence presented at trial. *State v. Richardson*, 2016-Ohio-8448, ¶ 13.

{¶24} Importantly, the appellate court does not weigh witness credibility. *Jenks*, paragraph two of the syllabus; *Walker* at ¶ 30. Instead, we ask whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001), citing *Jenks*; *see also Walker* at ¶ 31; *State v. Poutney*, 2018-Ohio-22, ¶ 19.

{¶25} A conviction will not be reversed for insufficiency unless reasonable minds could reach only one conclusion - acquittal. *State v. Ketterer*, 2006-Ohio-5283, ¶ 94, citing *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997); *accord State v. Montgomery*, 2016-Ohio-5487, ¶ 74.

**Aggravated Arson**

{¶26} Stacy was convicted of aggravated arson under R.C. 2909.02(A)(1), which required the State to prove beyond a reasonable doubt that he:

1). Knowingly;

2). By means of fire or explosion;

3). Created a substantial risk of serious physical harm to any person

other than himself.

{¶27} There is no dispute regarding the second element—a fire was set on the stovetop inside Stacy's trailer. The contested issues concern whether Stacy acted knowingly and whether the fire created a substantial risk of serious physical harm.

**Knowingly**

{¶28} R.C. 2901.22(B) sets forth the definition of how and when a person acts knowingly,

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶29} Absent an admission, a defendant's mental state must be inferred from the surrounding facts and circumstances, including the act itself. *State v. Johnson*, 56 Ohio St.2d 35, 38 (1978), citing *State v. Huffman*, 131 Ohio St. 27 (1936); *see also State v. Rojas*, 64 Ohio St.3d 131, 139 (1992); *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist. 2001).

{¶30} As this Court has recognized, arson cases rarely involve eyewitnesses. In such cases, circumstantial evidence alone can be strong enough to support a conviction. *State v. Hall*, 2005-Ohio-4403, ¶ 31 (5th Dist.); *State v. Ray,* 2025-Ohio-2023, ¶ 43 (5th Dist.).

{¶31} Circumstantial evidence is defined as "'testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.'" *State v. Nicely*, 39 Ohio St.3d 147,150 (1988), quoting Black's Law Dictionary (5th Ed. 1979).

{¶32} The evidence here demonstrates that Stacy left the trailer and went to a nearby abandoned house shortly before the fire was discovered. Earlier that morning,

Jeremy Moore heard the trailer windows being broken. *T.* at 134. The fire originated on the gas stove, where all knobs were in the "off" position, and no food was present. *Id.* at 243, 248-249. The trailer lacked electrical service, eliminating an electrical cause. Bibighaus, the fire investigator, testified that several lighters found at the scene were the only competent ignition sources. *Id.* at 260. Only Stacy and his father had access to the trailer, and no one saw Stacy's father at the scene that day before the fire. *Id.* at 156.

{¶33} These circumstances, taken together, strongly support the inference that Stacy knowingly started the fire inside his trailer.

### Serious Physical Harm and Substantial Risk

{¶34} R.C. 2901.01(A)(5) defines "serious physical harm to persons" as "... (b) [a]ny physical harm that carries a substantial risk of death; (c) [a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) [a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) [a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

{¶35} R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶36} "'[T]he language chosen by the General Assembly contemplates three degrees of 'possibility': the highest is 'strong,' the middle is 'significant,' and the lowest is 'remote.'" *State v. Eggeman*, 2004-Ohio-6495, ¶ 40 (3rd Dist.) (Rogers, J., concurring in

part and dissenting in part), quoting 4 Ohio Jury Instructions (2003), Section 509.02(3), at comment. *See also State v. Gervin,* 2016-Ohio-8399, ¶151 (3rd Dist.).

{¶37} Stacy contends that the fire was too small and was quickly extinguished; therefore, Stacy argues that it could not have created a substantial risk of serious physical harm to any person or property. This argument overlooks the broader context. The 24-foot trailer was situated between two homes—one occupied by Jeremy Moore and Renee Bandy and their six children—and a vacant house only twenty-seven feet away. *T.* at 237-238. Several vehicles were parked nearby, and at least five or six children were playing outside when the fire started. *Id.* at 143-144, 159, 168-171.

{¶38} Bibighaus testified that, although the fire was discovered early and extinguished, had it spread, "somebody could have gotten . . . hurt pretty good." *T.* at 259. He further explained that the trailer was constructed primarily of wood and plastic, both highly combustible materials, and that the attached propane tanks—whether full or empty—posed an explosion hazard. *Id.* at 258. Photographs of the trailer, its location, and the damage caused by the fire were admitted into evidence. State's Exhibits 3A-3F; 4A-4C.

{¶39} Given these facts, a rational trier of fact could find that Stacy's actions created a strong possibility—far more than a remote risk—of serious physical harm to persons nearby.

**Conclusion - Sufficiency of the Evidence**

{¶40} When the evidence is viewed in the light most favorable to the prosecution, it was more than sufficient for a rational jury to conclude that Stacy knowingly set a fire

inside his trailer, creating a substantial risk of serious physical harm to others. The State satisfied its burden on every element of the charge of aggravated arson.

{¶41} Accordingly, the trial court properly denied Stacy's Crim.R. 29 motion, and the conviction is supported by sufficient evidence.

{¶42} Stacy's first assignment of error is overruled.

II.

{¶43} In his second assignment of error, Stacy contends that his conviction is against the manifest weight of the evidence. We disagree.

**Standard of Appellate Review – Manifest Weight of the Evidence**

{¶44} The term "manifest weight of the evidence" relates to persuasion. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith,* 80 Ohio St.3d 89, 102 n.4 (1997); *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶45} When reviewing the manifest weight of the evidence, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient. *Thompkins* at 387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).

{¶46} Appellate courts have traditionally presumed the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, all critical factors in evaluating credibility. *Eastley* at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶47} The Supreme Court of Ohio reiterated that an appellate court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Jordan*, 2023-Ohio-3800, ¶ 17. The Court specifically directed, "'Sitting as the "thirteenth juror,"' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion." *Id., citing State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Sheppard,* 2025-Ohio-2747, ¶ 24 (5th Dist.).

{¶48} A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387 [internal quotations omitted].

{¶49} To reverse a conviction on manifest-weight grounds, all three judges on the appellate panel must concur. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2-4, *citing Thompkins*, syllabus ¶ 4.

{¶50} The jury, as the trier of fact, is charged with evaluating the evidence, determining witness credibility, and resolving conflicts in testimony. It was free to believe all, part, or none of the testimony presented. *See State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.), citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). The law is clear that inconsistencies in testimony do not automatically render a conviction against the manifest weight of the evidence. *State v. Craig*, 1999 WL 29752 (10th Dist. Mar. 23, 2000), citing *State v. Nivens*, 1996 WL 284714 (10th Dist. May 28, 1996).

{¶51} Although the State's case relied in part on circumstantial evidence, that does not diminish its probative value. The Supreme Court of Ohio has long held that circumstantial evidence carries the same weight as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus*, superseded on other grounds by constitutional amendment as recognized in State v. Smith,* 80 Ohio St.3d 89, 102 n.4 (1997).

{¶52} Here, the witnesses testified at trial and were thoroughly cross-examined. The jury had the opportunity to observe their demeanor, assess their candor, and consider any potential bias. In addition, the State introduced photographs of the damage caused by the fire, as well as the location of the nearby homes, allowing the jury, for themselves, to evaluate the nature and extent of the danger the fire posed. The jury could weigh all the evidence in context.

{¶53} Having independently reviewed the entire record, weighed the evidence and reasonable inferences, and considered the witness' credibility as a "thirteenth juror", we find no compelling indication that the jury lost its way or created a manifest miscarriage of justice. To the contrary, the greater weight of credible evidence supports the verdict.

{¶54} Stacy's second assignment of error is overruled.

{¶55} The judgment of the Stark County Court of Common Pleas is affirmed.

For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas is affirmed.

Costs to Appellant.

By: Popham, J.

Baldwin, P.J. and

King, J. concur.